315 So.2d 139

**John D. McCARTY, alias**

v.

**STATE.**

**5 Div. 271.**

Court of Criminal Appeals of Alabama.

June 17, 1975.

Richard D. Lane, Auburn, for appellant.

William J. Baxley, Atty. Gen. and Carol Jean Smith, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:

"The Grand Jury of said County charge that before the finding of this Indictment, JOHN D. MCCARTY, alias JOHN DOUGLAS MCCARTY, whose true christian name is otherwise unknown

to the Grand Jury, who had been convicted of the crime of Grand Larceny, in the Circuit Court of Talladega County, at Talladega, Alabama, on or about the 22nd day of September, 1971, did unlawfully own or have in his possession or control a pistol, contrary to Title 14, Section 174(A) of the Code of Alabama as Recpmpliled (sic) in 1958, against the peace and dignity of the State of Alabama."

Prior to arraignment appellant was found to be indigent and the court appointed counsel to represent him at arraignment and trial. He pleaded not guilty. After conviction he gave notice of appeal, was furnished a free transcript, and trial counsel was appointed to represent him on appeal. The trial court sentenced him to five years imprisonment in the penitentiary.

The state's first witness was James E. Robinson of Sylacauga, Alabama. Mr. Robinson testified that he was a cab driver for the Yellow Cab Company and that appellant was a cab driver for the DeLuxe Cab Company and they were next door to each other. Robinson further testified that he was the owner of a 1956 blue Chevrolet automobile and that on August 13, 1974, appellant came to him and asked if he could borrow his car at 8:00 p. m. that night. He told appellant that he had to use his car at that time but he would let him have it at 11:00 p. m. that night. This witness further testified that he did not own a gun and on the day before appellant got his car that night he put a tape recorder under the dashboard of his car and he did not see a pistol under the dashboard or anywhere else in his car. He said that appellant and a boy named Keith Heath got in his car and left the cabstand around eleven o'clock on the night of August 13, 1974; that the next time he saw his automobile was the next day at the Opelika Police Headquarters at which time the officers surrendered his car to him.

Keith Heath, a fifteen-year-old boy, was the next witness for the state. According to Heath's testimony, appellant asked him to ride with him to Opelika as he wanted to see his wife, Sherri. Appellant and Sherri were not actually married but had lived together as husband and wife in Sylacauga for about seven months. She was temporarily living in Opelika where she was employed at a sheet metal company. Heath said that shortly before leaving for Opelika appellant asked him if he had any .22 shells and he told him he had some at home. Appellant asked him to go home and get them. He further told Heath that he had a .22 caliber pistol under the dashboard of the car they were going to drive that night, saying, "he was going to see his wife, and if anybody stepped in his way, he was still going to see her and that's why he brung (sic) the pistol along." The prosecutor asked him to repeat that statement and Heath said:

"He said if anybody steps in his way, he was going to get his wife. He said if anybody, you know, he said if anybody stepped in his way, he was going to get his wife and he might have to use the pistol."

Heath went home and changed clothes and brought along a jacket in which he had two boxes of .22 cartridges. They got to Opelika around 2:00 a.m. on August 14, 1974, and slept in the car until daylight. They rode around until they found the address where Sherri was living. Appellant asked Heath to go to the door and knock and tell the people he needed to use the telephone. He did not need to use the telephone but just wanted to see if Sherri was there. Someone came to the door and he asked to use the telephone and was asked his name. After telling them his name, he was told he could not use the phone. He did not see Sherri. He returned to the car and told appellant what had occurred. He and appellant rode around for awhile and located the sheet metal place where Sherri was supposed to be at work. Appellant drove down an alley by the building and parked.

The Opelika Police Department received a radio message concerning the automobile occupied by appellant and Heath. A patrol car was dispatched to locate this 1956 blue Chevrolet and found it parked in the alley behind the sheet metal company. One officer approached the car on the passenger side and told Heath to get out. Heath got out with a pocket knife in his hand and the officer asked him to surrender the knife but Heath refused and started reaching back in the front seat. The officer grabbed Heath and took the knife from him. Meanwhile the other officer got the driver (appellant) out of the car and observed a Bowie knife sticking up from the back of the front seat. Both men were arrested for having concealed weapons, placed in the patrol car, and transported to the station house. One of the officers drove the Chevrolet to the station house, locked the car and turned the keys over to the officer at the book-in desk. Appellant and Heath were told to empty their pockets at the book-in desk. When Heath put the two boxes of .22 cartridges on the desk, the officers suspected that a .22 pistol or .22 rifle was in the car. The officers then and there gave appellant and Heath the *Miranda* rights and warnings and appellant executed a waiver of rights form which reads as follows:

"STX–1     D–X–1
10–18–74     10–18–74
RS          RS
YOUR RIGHTS
"PLACE     OPELIKA     POLICE     DEPARTMENT
DATE     8/14/74
TIME 10.42 AM
EDUCATION     10th     Grade—completed
G.E.D.

"BEFORE WE ASK YOU ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.

"YOU HAVE THE RIGHT TO REMAIN SILENT.

"ANYTHING YOU SAY CAN BE USED AGAINST YOU IN COURT.

"YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE HIM WITH YOU DURING QUESTIONING.

"IF YOU CANNOT AFFORD A LAWYER, ONE WILL BE APPOINTED FOR YOU BEFORE ANY QUESTIONING IF YOU WISH.

"IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME. YOU ALSO HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL YOU TALK TO A LAWYER.

"WAIVER OF RIGHTS

"I HAVE READ THIS STATEMENT OF MY RIGHTS AND I UNDERSTAND WHAT MY RIGHTS ARE. I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS. I DO NOT WANT A LAWYER AT THIS TIME. I UNDERSTAND AND KNOW WHAT I AM DOING. NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OR COERCION OF ANY KIND HAS BEEN USED AGAINST ME.

"SIGNED /s/ John McCarty
WITNESS /s/ DAN E. DAVIS
WITNESS /s/ Nick Abbett
TIME 10:45 AM"

One of the officers asked appellant for permission to search the automobile telling him that he had a constitutional right to refuse permission and force the officer to secure a search warrant. Appellant told the officer he could search the car if he wanted to, saying, "I have nothing to hide." Upon searching the car one of the officers found a .22 caliber pistol with the trigger guard on a hook under the dashboard of the automobile. The pistol was fully loaded. After finding the pistol, appellant was

interrogated by an Opelika Police Detective.

From the record:

"Q. Did you ask the defendant at this time if he had ever been convicted of a felony?

"A. Yes, sir.

"Q. What did he say?

"A. He stated that he had been convicted of a felony before."

The state did not go further and prove that the *felony* appellant confessed to having theretofore committed was *grand larceny* as charged in the indictment, or any other *crime of violence* mentioned in Title 14, Section 172, Code of Alabama 1940.

The allegation in the indictment that the defendant "had been convicted of Grand Larceny, in the Circuit Court of Talladega County, Alabama, on or about the 22nd day of September, 1971," was a material and essential ingredient of the crime denounced in Title 14, Section 174(a), Code of Alabama 1940, and the burden was on the state to prove this averment beyond a reasonable doubt and to a moral certainty.

The state has the burden to prove beyond a reasonable doubt every material ingredient of the crime charged. *Piano v. State,* 161 Ala. 88, 49 So. 803, and other cases too numerous to cite.

The state attempted to prove that appellant had been convicted of grand larceny in the Circuit Court of Talladega by introducing in evidence a certified copy of the "bench notes" of that court. In permitting the state to introduce in evidence, over appellant's objection, the trial docket sheet showing appellant's conviction of grand larceny in Talladega County, the trial court committed reversible error. *Childers v. Holmes,* 207 Ala. 382, 92 So. 615; *Harris v. State,* 54 Ala.App. 10, 304 So.2d 252; *Palmer v. State,* 55 Ala.App.

707, 312 So.2d 399 Ms, released by this court on March 18, 1975.

Appellant raised this issue in several ways, (1) by objecting to the introduction of the docket sheet or "bench notes", (2) request for the affirmative charge, and (3) motion for a new trial.

For the error noted this case is reversed and remanded for a new trial.

Reversed and remanded.

All the Judges concur.