Second degree murder; sentence: ten years. *Page 867 
On Christmas Eve 1974, the appellant's car collided with a car driven by James Alvin Nix. The collision took place on Highway 143 in Montgomery County near the Tyler-Goodwyn Bridge. As a direct result of the collision, William Thomas Nix, a six-year-old child, was killed. William Thomas Nix was a passenger in the car driven by James Alvin Nix, his father.
The overwhelming weight of the evidence presented showed that the appellant was at fault in the collision and that the appellant was driving while intoxicated. The State presented numerous witnesses on the issues of fault and intoxication including occupants of the car hit by the appellant, law enforcement officers and other citizens who arrived on the scene immediately after the collision. The State also introduced the result of the appellant's P.E.I. (Photo-Electric Intoximeter) test which read .17. It is a rebuttable presumption that a reading of .10 or above establishes that one is under the influence of alcohol to the extent one cannot safely operate a motor vehicle.
The State indicted and tried the appellant under the fourth class of first degree murder found in Title 14, § 314, Code of Alabama 1940, which reads in pertinent part as follows:
 ". . . or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life, is murder in the first degree; . . ."
Mitchell v. State, 60 Ala. 26 (1877), quoting from Blackstone, 4 Com. 200, refers to the preceeding provision as being applicable to the following:
 ". . . `Neither shall he be guilty of a less crime, who kills another in consequence of such a willful act as shows him to be an enemy to all mankind in general; as going deliberately, and with an intention to do mischief, upon a horse used to strike or coolly discharging a gun among a multitude of people. So, if a man resolves to kill the next man he meets, and does kill him, it is murder, although he knew him not; for this is universal malice.' And we may mention the intentional wrecking of a passenger train on a railroad, by which a life or many lives are destroyed, as another instance of universal malice. . . ."
Mitchell also defines universal malice as follows:
 ". . . that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim. The supreme depravity shown in this so-called universal malice, is considered as the equivalent of the strong adjectives, willful, deliberate, malicious, and premeditated, which characterize the first class of murder in the first degree."
The State's theory in the present case is that the appellant's act of driving while intoxicated evidenced the requisite "depraved mind."
 I
The State introduced into evidence prior convictions of traffic offenses which were contained in the appellant's driving records. The convictions read as follows:
 "February 26th, 1957, convicted of speeding; December the 30th, 1961, convicted of reckless driving.
* * * * * *
 "October 13th, 1962, improper brakes; October 27th, 1962, failed to stop at a stop sign; December 1st, 1962, speeding; June 29th, 1963, improper brakes; November 16th, 1963, driving while license revoked; October 16th, 1965, driving while intoxicated; March 3rd, 1970 driving while license revoked; February 4th, 1972, reckless driving." *Page 868 
The appellant made a timely objection to the introduction and admission of the above record. If the basis for admissions of this record of convictions was to impeach the credibility of the appellant's testimony, then the admission would have been error as the above crimes do not involve "moral turpitude."Sims v. Callahan, 269 Ala. 216, 112 So.2d 776 (1959). Also, such record of convictions would be inadmissible if offered to prove that the appellant was drunk on Christmas Eve 1974.Wilkins v. State, 29 Ala. App. 349, 197 So. 75 (1940).
The State contends that the record of convictions was introduced and is admissible solely for the purpose of demonstrating the appellant's repeated, prolonged, and conscious indifference to the consequences of his improper driving. Such habitual indifference, the State contends, would be evidence of the appellant having had a depraved mind on Christmas Eve 1974.
The issue of whether prior traffic convictions may be introduced to show a depraved mind at the time of the homicide by reason of the defendant's driving a vehicle while intoxicated appears to be a question of first impression in Alabama. However, several cases have indicated in dicta that evidence of prior offenses may be admissible to show the element of malice. McMurtrey v. State, 37 Ala. App. 656,74 So.2d 528 (1954); Murphy v. State, 52 Ala. App. 490,294 So.2d 457 (1974). Wharton's Criminal Evidence, Vol. 1, § 246 (13th ed. 1975) also states that evidence of other crimes may be admissible to show malice. It seems that under certain circumstances prior conduct on the part of the appellant, including recent criminal convictions for driving while intoxicated, might be probative of the state of mind of the appellant on Christmas Eve 1974. If evidence had been introduced tending to show that the appellant habitually drove his car while intoxicated or that he had numerous recent
convictions for driving while intoxicated, such evidence would probably be indicative of malice, or a wanton and willful disregard for human life pursuant to the definition stated inMitchell, supra.
The appellant objected to the driving record being admitted on the ground that such record was not relevant and was too remote in time from the alleged murder. We agree.
The prior convictions took place, on the average, approximately ten years before the fatal wreck in question. From the record, it is impossible to conclude that any of the convictions other than the October 16, 1965, D.W.I. conviction, had anything at all to do with intoxication.
Ordinarily, remoteness of time affects the weight and probative value rather than the admissibility of evidence and admission of such evidence rests largely in the trial court's enlightened discretion. Smitherman v. State, 33 Ala. App. 316,33 So.2d 396 (1948). In Wilkins, supra it was said that remoteness of time of the commission of previous acts does not alone render them inadmissible as evidence of intent or identity. However, in the present case, the State seeks to show an habitual indifference amounting to malice on the part of the appellant through the introduction of the appellant's prior record of traffic convictions.
In a similar case, Waters v. State, 80 Ga. App. 559,56 S.E.2d 924 (1949), the defendant was charged with manslaughter by operation of an automobile. The State of Georgia introduced evidence of a plea by the defendant of guilty to D.W.I. in 1941 to show, among other purposes, a "bent of mind" on the defendant's part. There, the court held that the evidence should have been excluded because of remoteness. It should be noted that there is a recent trend in the United States as evidenced by the Federal Rules of Evidence, § 609, to exclude evidence of prior conduct which is remote in time, unless the prior *Page 869 
conduct is highly probative of a material issue.
While it is true that a trial judge has wide discretion in determining remoteness and relevance, we conclude that such discretion was abused in the present case. Prior convictions for driving while his license was revoked, running stop signs, reckless driving, speeding, and improper brakes, between October 1957 and February 1972, have no bearing on the issue of the appellant's state of mind on December 24, 1974.
The cumulative effect of allowing the Deputy Custodian of Records for the Department of Public Safety to read a list of the appellant's prior traffic convictions which were either remote or not relevant violated the substantial rights of the appellant.
 II
The appellant also contends that the method of introducing appellant's prior traffic convictions was in error. We again agree.
The Deputy Custodian of Records for the Department of Public Safety was allowed to testify as to the appellant's prior traffic convictions by reading a compilation of the appellant's driving record which was on file with that Department. The cases are in agreement that the proper method of proving a prior conviction is by a judgment entry in the court records or a certified copy of the court record showing a judgment entry of the prior conviction. Highsmith v. State, 55 Ala. App. 272,314 So.2d 874 (1975); Headley v. State, 51 Ala. App. 148,283 So.2d 458 (1973). In Highsmith, supra, proof of the previous conviction was part of the prosecution's case in chief and inHeadley, supra, the proof of the prior conviction was presented to bear on the credibility of a defendant's testimony. The State cites Ellis v. State, 244 Ala. 79, 11 So.2d 861 (1943) for the proposition that a trial docket sheet of a defendant's prior conviction is a proper method of introducing a defendant's record of prior convictions. Therefore, the State contends, an official traffic record should also be admissible to show prior traffic convictions. In Ellis, supra, the defendant had previously admitted on cross-examination that he had been convicted of other crimes and the trial docket sheet was merely cumulative evidence of an admitted fact.
A record of prior convictions which is offered to prove a material element in a charge of first degree murder must be submitted by way of a judgment entry in the court records, a certified copy of the judgment entry in the court record, or by the oral testimony of the defendant. The aforementioned procedure was not used in the present case, therefore, the records from the Public Safety Department were legally inadequate and inadmissible.
Pursuant to Title 36, § 68, Code of Alabama 1940, the various municipal and county courts send a record of conviction of certain driving offenses to the Department of Public Safety. Such records are used to determine whether an offender's driver's license should be administratively suspended or revoked. The director of that Department may rely upon those records of convictions in taking such administratrive action. But here we are asked to go a step further and say that a compilation or list of those records is admissible as proof of the conviction. As stated in Lowery v. State, 55 Ala. App. 514,317 So.2d 365 (1975):
 "Hearsay in documents does not become admissible by merely having a custodian certify a copy to be the same as the original document. . . ."
The list itself was not in fact introduced into evidence, but the deputy custodian was allowed to verbally testify as to its contents in the instant case. This is also impermissible.Childers v. Holmes, 207 Ala. 382, 92 So. 615 (1922). *Page 870 
This Court reversed the same trial judge in 1970 on substantially the same point of law. In Goodwin v. State,46 Ala. App. 149, 239 So.2d 221, the appellant there had been convicted of possessing a pistol after having a prior conviction of a crime of violence, per Title 14, § 174, Code of Alabama 1940. The trial judge, over objection, allowed a witness to prove the prior conviction by reading such from a report of the F.B.I. In reversing, this Court stated:
 "Proof of conviction comes from the original court record or a certified copy thereof. No proper predicate was laid for oral proof of a secondary nature.
 "We judicially know of no Alabama statute making a report from the Federal Bureau of Investigation of the Department of Justice evidence of a conviction in any jurisdiction.
 Hence, the rulings cited above were erroneous under established rules enunciated in this State at least as early as 1846 and repeated without deviation. . . ."
We see no material difference in attempting to prove prior convictions by reading an F.B.I. "rap sheet" and in reading from a compilation of reports from the files of the Public Safety Department.
In the instant case, the trial judge, in ruling on the objection, stated:
 ". . . This Court realizes that this is a departure from existing practices, but the facts of this case, and most especially, the problems of protecting the motoring public from this type of driving abuse justifies. I believe it is a proper statement to state that what the law is is not necessarily what the last appellate court said it was, but rather what can reasonably be assumed what the next court will say the law is under the existing circumstances. And I could not conceive in my wildest sense of right and wrong that a jury trying this case should not be allowed the opportunity to hear this type of testimony. (Emphasis supplied.)
Contrary to the assertions of the trial judge, the doctrine of stare decisis is well founded in the law of Alabama. As stated by the Court of Appeals in Atkins v. State, 27 Ala. App. 212,169 So. 330 (1936):
 "Inferior courts are bound by the decisions of the appellate courts of this state and should keep informed as to these decisions. Had this been done in the case at bar the labor expense and time involved would have been avoided."
See also: Mitchell v. City of Dothan, 33 Ala. App. 19,30 So.2d 735 (1947), affirmed, 249 Ala. 253, 30 So.2d 737; Article VI, Constitution of Alabama (Judicial Article) ratified December 27, 1973. The appellate courts of this State have not deviated in the instant rule since 1846, as stated in Goodwin, supra, and we do not do so now. McCarty v. State, 55 Ala. App. 342,315 So.2d 139 (1975); Palmer v. State, 54 Ala. App. 707,312 So.2d 399 (1975).
 III
It is worthy of note that there have been previous prosecutions and convictions for murder where a defendant was found to have been driving while intoxicated. Hyde v. State,230 Ala. 243, 160 So. 237 (1935). In Hyde the defendant was indicted and tried under the first class of first degree murder.
The approach used in the present case seems preferable to theHyde approach. However, this appears to be an area which is ripe for legislative action. A statute which speaks specifically to the elements of vehicular homicide while intoxicated, along with an appropriate penalty section, would be an immense improvement over the present attempts to prosecute for such conduct under our traditional murder statutes. *Page 871 
 IV
The appellant further contends that it was error to allow a wrecker driver to testify as to a conversation that took place between himself and the appellant's father. This conversation was held approximately one hour after the wreck and the appellant's father purportedly told the wrecker driver that he knew appellant had been drinking. This is the rankest sort of hearsay and should not have been admitted over the appellant's timely objection. The State contends that under Dodd v. State,26 Ala. App. 367, 160 So. 267 (1935), the admission of the above mentioned hearsay was harmless error. Strickland v. State,269 Ala. 573, 114 So.2d 407 (1959) appears to be a case that would also support the State's contention. As the present case is being reversed on other previously mentioned grounds, we will not reach the question of harmless error at this time. Hopefully this particular error will not be repeated on retrial of this case.
For the foregoing reasons, it is necessary that the appellant be given a new trial.
REVERSED AND REMANDED.
All the Judges concur.