ON RETURN TO REMAND
The opinion issued by this Court on October 7, 1980, is hereby withdrawn and the following becomes the opinion of the Court.
In April of 1978, Mrs. Edwin Rinehart was killed in an automobile accident caused by an intoxicated Hugh Palmer.
The defendant was indicted and convicted for second degree murder. Sentence was twenty years' imprisonment.
 I
Initially, it is argued that an inculpatory statement was improperly admitted into evidence in that it was not proven that the defendant was capable of intelligently and knowingly waiving his constitutional rights because of his physical and mental condition following the collision.
Approximately two hours after the accident, Alabama State Trooper L.S. Barginear questioned the defendant in the emergency room of the Druid City Hospital. The defendant was lying on a bed or cot awaiting treatment. Trooper Barginear read the defendant his "Miranda" rights from a card and asked him if he understood those rights. The defendant said he understood and consented to talk. The trooper stated that the defendant's speech was "slurred" and that the defendant appeared to have been drinking. However, Barginear stated that the defendant responded to all of his questions, appeared to understand what his rights were, appeared to have his faculties about him, responded to his questions in an intelligent manner, and appeared to have no difficulty in comprehending what the questions were and providing answers. When asked, "Is there anything in your mind to cause you to hesitate about believing that Mr. Palmer did knowingly and intelligently understand the questions on that occasion?", the trooper responded, "Like I said, he understood them."
The defendant had a blood-alcohol level of .26. There was no evidence of how this degree of intoxication affects comprehension and understanding. The defendant had an open wound on his head which had not yet been sewn up. The delay in closing the wound was apparently caused by the fact that the emergency room physician requested the assistance of a facial plastics doctor to come in and repair the cut over the eye. This laceration on the defendant's face was "pretty extensive" but there was no concussion. The emergency room physician responded to a question about whether he noticed anything unusual about the defendant's speech: "Well, if you mean was he all together, with it — he was not; he was groggy, almost lethargic." When this physician was questioned about the defendant's ability to answer his questions and assist in the examination, the doctor replied, "When I asked him to roll over, sit up, this sort of thing, he could do that."
The trial judge wisely reserved his ruling until he had heard the trooper's questions and the responses given by the defendant. The trooper testified that the only question that the defendant had difficulty with was his current address. The defendant did not know his box number but the trooper stated that "they change them up there every *Page 268 
three days, I believe." The defendant told Trooper Barginear that he was taking medication for high blood pressure.
In order for intoxication to render a confession inadmissible, it must be shown that the mind would have been impaired substantially. This principle was discussed in Rogersv. State, 365 So.2d 322, 334 (Ala.Cr.App.), cert. denied,365 So.2d 334 (Ala. 1978), where this Court concluded:
 "Where ample evidence, even though conflicting, exists from which the trial judge could conclude that the appellant was not intoxicated to the extent of mania, the admission of a confession for a jury's consideration is not an abuse of discretion." Rogers, 365 So.2d at 334.
See also Jackson v. State, 375 So.2d 558 (Ala.Cr.App. 1979). This principle holds true even if the defendant was intoxicated to the extent that he could have been arrested for intoxication if on a public street. Woods v. State, 54 Ala. App. 591,310 So.2d 891 (1975). Proof of intoxication amounting to mania or such impairment of the will and mind as to make a person confessing unconscious of the meaning of his words renders the confession made by him inadmissible, but a lesser state of intoxication will not render the confession inadmissible.Carter v. State, 53 Ala. App. 43, 297 So.2d 175 (1974). The fact that an accused is not in full possession of his mental faculties when the confession is made does not render it inadmissible, but only affects the weight to be accorded by the jury. Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967);Sullivan v. State, 351 So.2d 659 (Ala.Cr.App.), cert. denied,Ex parte Sullivan, 351 So.2d 665 (Ala. 1977); Arnold v. State,348 So.2d 1092 (Ala.Cr.App.), cert. denied, Ex parte Arnold,348 So.2d 1097 (Ala. 1977); Barnett v. State, 348 So.2d 512
(Ala.Cr.App. 1977). Through the trooper's testimony, the State offered evidence that the confession was voluntary. As the trial judge did, we have taken into account the defendant's answers to Trooper Barginear's questions. Here there is simply insufficient evidence to indicate, as a matter of fact, that the defendant's reason, intellect or will was so impaired as to render any statement he made involuntary. The admission of the confession was without error.
 II
In its case in chief, the State introduced evidence that the defendant had been arrested in 1973 for driving while intoxicated and for reckless driving and that he had also been arrested in 1976 for driving while intoxicated. The circumstances and details surrounding the events which culminated in the two arrests were admitted into evidence. Included in these facts were the results of photoelectric intoximeter tests on the defendant. In the 1973 incident the defendant measured .210; in 1976, .18. There was no indication of any type made before the jury that the defendant was ever convicted of any of these charges. In fact, the defendant was actually convicted of reckless driving in both cases but the fact of his convictions was never presented to the jury. In sum, the prosecution merely introduced evidence of other acts
of driving while intoxicated by the defendant. The accident which caused Mrs. Rinehart's death occurred in April of 1978. The defendant objected to the admission of these prior offenses on the grounds that they were "not relevant in point of time" and because there was no showing that the defendant was represented by counsel.
In McGhee v. State, 333 So.2d 865, 868 (Ala.Cr.App. 1976), this Court addressed this same issue. There this Court reversed the conviction because the State introduced prior convictions of the defendant for driving while his license was revoked, running stop signs, reckless driving, speeding and improper brakes, which convictions occurred, on the average, approximately ten years before the fatal accident. In reaching this decision this Court noted:
 "It seems that under certain circumstances prior conduct on the part of the appellant, including recent criminal convictions for driving while intoxicated, might be probative of the state of mind of the appellant on Christmas Eve 1974 (the night of the fatal accident). If evidence *Page 269 
had been introduced tending to show that the appellant habitually drove his car while intoxicated or that he had numerous recent convictions for driving while intoxicated, such evidence would probably be indicative of malice, or a wanton and willful disregard for human life pursuant to the definition stated in Mitchell [v. State, 60 Ala. 26
(1877)] supra." McGhee, 333 So.2d. at 868.
In order to prove that a homicide committed by an intoxicated driver of an automobile constitutes murder in the second degree, the evidence must show that the accused either intentionally caused the collision or that he was conscious of his acts, conscious of the impending danger surrounding him, and of the probable results, and then with a reckless indifference to the probable consequences of his acts brought about the collision and death of the deceased. Commander v.State, 374 So.2d 910 (Ala.Cr.App.), cert. quashed,374 So.2d 921 (Ala. 1978). In this case we think that the prior incidences of driving while intoxicated by the defendant were admissible and were highly irrelevant to prove the reckless indifference of the defendant to the probable consequences of his acts.
 "If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question the greater the likelihood that the act in question was not done inadvertently."
 C. Gamble, McElroy's Alabama Evidence, Section 69.01 (5) (3rd ed. 1977).
Two other rules from McElroy are also of help to us in reaching our conclusion:
 "If the accused's commission of a prior crime is relevant, otherwise than as tending to prove his bad character, and falls within one of the exceptions to the general exclusionary rule, evidence of his acquittal or conviction thereof does not affect its admissibility."
McElroy, Section 69.02 (2)
* * * * * *
 "If the accused's commission of another crime is admissible in a present prosecution, the state may prove in meticulous detail the manner in which the accused committed such other crime."
McElroy, Section 69.02 (8).
In the 1973 conviction, the defendant had been driving on the shoulders of the road into the oncoming lane of traffic. In the case under review, the defendant was on the wrong side of the road when he crashed into Mrs. Rinehart. In 1976, the defendant plowed his automobile into the rear of another car which was traveling in the same direction. This collision totaled the other automobile and resulted in serious physical injury to the other driver. Both incidents occurred while the defendant was traveling on Highway 43 in Tuscaloosa County. The bridge where this incident occurred is also on Highway 43.
The question of remote evidence was discussed in Smithermanv. State, 33 Ala. App. 316, 318, 33 So.2d 396 (1948).
 "Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results therefore that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course, it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main fact."
Remoteness with respect to the admissibility of evidence is a relative idea and varies in its application according to the facts of each case. Dorch v. State, 40 Ala. App. 475,115 So.2d 287 (1959). See C. Gamble, McElroy's Alabama Evidence, Section 21.01 (2) (3rd ed. 1977). *Page 270 
Considering the circumstances giving rise to the prior arrests in relation to the particulars of this incident, including the time elements involved, we do not find that the prior incidents were so remote as a matter of law as to render them inadmissible in the defendant's trial. Under these circumstances, their admission was a matter within the sound discretion of the trial judge which we find has not been abused.
The defendant also maintains that his prior "convictions" were inadmissible because there was no showing that he was represented by counsel. It is clear that to permit a conviction obtained in violation of Gideon v. Wainwright, 372 U.S. 335,83 S.Ct. 792, 9 L.Ed.2d 799 (1963), either to support guilt or to enhance punishment for another offense constitutes a denial of due process. Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258,19 L.Ed.2d 319 (1967). This Court has held that the use of a prior conviction to enhance punishment in a case without first affirmatively establishing that the defendant was represented by counsel or waived counsel at the time of the prior offense was error. Highsmith v. State, 55 Ala. App. 272, 314 So.2d 874
(1975).
Although on appeal both the State and the defendant base their arguments on the assumption that the defendant's convictions resulting from the two prior incidents were placed in evidence before the jury, a careful reading of the record shows that this was not the case. The transcript before us gives absolutely no indication that the jury was ever informed by any means that the defendant had prior convictions resulting from the 1973 and 1976 accidents. Because the State did not attempt to prove that the defendant had been convicted of any prior offense, there was no need or reason to require proof that he had been represented by counsel.
We have searched the record and found no error prejudicial to the substantial rights of the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.