Sexual abuse in the first degree; sentence: five years' imprisonment.
On July 25, 1981, the prosecutrix, who was then sixteen years old, went to her brother's trailer to get some medicine for her father. Because she was unable to find the medicine, the prosecutrix went next door to her brother-in-law's home to attempt to use the telephone. Her brother-in-law, the appellant herein, met her at the door, invited her in, and told her she could use the telephone. As the prosecutrix attempted to leave after completing her telephone call, appellant closed and locked the door and told the prosecutrix he wanted "to feel" her. Appellant grabbed the victim, began to kiss her, and then threw her onto a loveseat in the living room. Appellant lay beside her on the sofa and moved his body toward her. He then picked her up and carried her into the bedroom and threw her onto the bed. In the prosecutrix' words, the following then occurred:
 "He come down on top of me and he was kissing me and everything, again, I was telling him to quit, I told him if he cared anything about my sister he wouldn't be doing that and then he pulled my shorts off and I was fighting him and I told him *Page 1118 
I had to get my father's medicine to him within thirty minutes and he told me that it wouldn't take that long and then he just kind of slid my panties out of the way and starting sticking his finger in me and I was hollering and telling him to quit and he was just hunching on my legs and stuff. I told him I had to go and he just quit, he said well, that is all I wanted." (R. 31)
The prosecutrix put her shorts on and then fled from the house.
 I
Appellant argues reversible error occurred when the trial judge allowed the State to introduce on rebuttal, over appellant's objection, evidence proving appellant had committed a different sexual offense, upon a third party, approximately ten years prior to the immediate offense. The State's rebuttal witness testified she was also related to appellant, as his first cousin, and that she had been raped by him, at her home, in 1972. She described the attack as follows:
 "He opened the door and pushed me all the way through the house to the bedroom.
. . . .
 "He pushed me down on the bed and he started tearing — I had my housecoat on with my panties and bra and he tore my clothes off of me and he beat me in the face and he beat me in the breast, and he put a pillow over my face and tried to smother me and told me if you ever tell a word of this I will kill you.
. . . .
 "His private parts entered mine twice, the whole time he was beating me and biting me and his fingers entered me, I don't know how many times, the whole time I was screaming then he put the pillow over my face and tried to smother me two or three different times to keep me from screaming."
(R. 144-145)
Appellant objected to the admission of the above testimony on grounds of remoteness, improper rebuttal, incompetency, irrelevancy, and immateriality.
Evidence of collateral acts or offenses, which are themselves similar to the offense being tried, may be admissible as relevant and material in proving the intent with which the accused acted on the occasion in question. Howton v. State,391 So.2d 147 (Ala.Cr.App. 1980).
As to appellant's remoteness objections, admissibility of evidence because of remoteness is a relative standard, varying in its application according to the facts of each case. Palmerv. State, 401 So.2d 266 (Ala.Cr.App.), cert. denied,401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280,71 L.Ed.2d 463 (1982). The issue of remoteness is analyzed inSmitherman v. State, 33 Ala. App. 316, 318, 33 So.2d 396, 398
(1948) as follows:
 "Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results, therefore, that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main event."
Remoteness of time alone does not render a prior, similar act or offense inadmissible. Yet, the trial court's discretion in admitting evidence does not extend to admitting evidence that is so remote as to time or circumstances that its relevance or materiality must rest in conjecture and speculation. White v.State, 380 So.2d 348 (Ala.Cr.App. 1980).
Where the competency of evidence is doubtful because of remoteness, the better practice is to admit the evidence, leaving it to the jury to determine its credibility and weight. If the questioned evidence tends to *Page 1119 
prove a fact for the jury's determination, however slight that evidence may be, it should be admitted as relevant. White, supra.
While a span of ten years between acts bears close scrutiny, it is not beyond the pale of reason. Demmert v. State,565 P.2d 155 (Alaska 1977); Maestas v. State, 224 N.W.2d 248 (Iowa 1974). See Annot. 88 A.L.R.3d 8 (1978); Palmer, supra (involving a span of five years). Because of the testimony's highly probative nature in illuminating appellant's intent, as discussed infra, we find the trial court did not abuse its discretion in overruling appellant's objection as to remoteness.
We note the prosecutrix' version of the events, when compared with the prior rape described by the State's rebuttal witness, indicates both assaults occurred on young female relatives of appellant who found themselves alone with appellant. As well, both followed similar patterns, with appellant throwing the victims onto the bed while evidencing a preoccupation with putting his finger inside the victims. While perhaps these facts alone might not be sufficient to warrant admitting the evidence as tending to prove an identity issue, see Hogue v.State, 54 Ala. App. 682, 312 So.2d 86 (1975), they do bare strongly in judging the relevancy and materiality of the evidence as to remoteness in proving appellant's intent. See also Smith v. State, 409 So.2d 455 (Ala.Cr.App. 1981).
Appellant took the stand and testified in his own behalf. He recalled the occasion of the prosecutrix using his telephone, but denied any sexual abuse, stating rather that they had engaged in a heated argument over a prior incident involving baby sitting.
Appellant described his actions and intent in so acting on the occasion in question as follows:
 "All right. Now, you said you had not seen Connie since that night up until the time she walked in on this occasion?
"No, sir, I sure hadn't, I had been laying for her.
 "Q Now, on this occasion when she was up there punching the phone, what did you do if anything?
 "A Well, I got ready to bless her out and that is exactly what I proceeded to do when she got off of this phone.
"Q Where were you standing?
"A I was standing right in the doorway.
"Q The doorway going into your house?
"A That's right."
(R. 138-139)
While appellant admits an altercation, at least verbally, occurred, and that he in fact "had been laying for her," he denied that any sexual motivation existed, or that any sexual encounter occurred. Thus, while appellant admitted the confrontation and that he "was standing right in the doorway," he denied his actions were sexually motivated.
In discussing the intent exception to the general rule against admitting other offenses, this Court in Whiddon v.State, 53 Ala. App. 280, 299 So.2d 326 (1973) stated:
 "One of the exceptions is that the other crime is admissible to show criminal intent. That issue, not identity, is here involved. Judge McElroy elucidates intent to mean the state of mind of any person at the time he does the act — the act together with such state of mind constituting the charged crime. It may be an intentional doing of the act as distinguished from an inadvertent doing of the act, or we might add, a casual or an isolated instance that found expression in an inept suggestion or approach. Judge McElroy, supra p. 168, further said, with logic and reason, that: `Because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater likelihood that the act in question was not done inadvertently. Therefore, in certain crimes the state may prove accused's doing of similar acts as tending to show that in doing of a now charged act, he had that intent that is an element of the now charged crime.'"
We find that the evidence of the prior rape was admissible for the purpose of proving the criminal intent and negating *Page 1120 
any innocent intent or any other intent as regards the act committed upon the prosecutrix. McKenzie v. State, 250 Ala. 178, 33 So.2d 488 (1947); O'Berry v. State, 361 So.2d 1132
(Ala.Cr.App.), cert. denied, 361 So.2d 1135 (Ala. 1978);Howton, supra.
Lest there be any doubt that intent is an issue under a charge of first degree sexual abuse, we set forth the following from Parker v. State, 406 So.2d 1036, 1039 (Ala.Cr.App.) cert.denied, 406 So.2d 1041 (Ala. 1981):
 "On its face, § 13A-6-66, fails to state any requisite culpable mental state. However, the term `sexual contact' as defined in § 13A-6-60 (3), and used in the above statute, requires that the touching be done for the purpose of gratifying the sexual desire of either party. Therefore, it is incumbent upon the State to establish intent to gratify the sexual desire of either party in order to complete proof of the crime."
Appellant admitted the confrontation in the presentation of his case, but denied any sexual intent or abuse. Appellant's intent therefore was in issue, and it was proper for the State on rebuttal to elucidate his intent on this occasion by offering evidence of prior sexual misconduct against another young female relative on a prior occasion. See O'Berry, supra. Finally we note that the trial court, in its oral charge, instructed the jury as follows:
 "There was some evidence that was allowed to come to you by the Court concerning prior acts between the Defendant and a Mrs. Gutherie, concerning another act or another offense in a different time and place. I instruct you that you consider that evidence along with all the other evidence in this as to its relevancy to prove, if it does, at the time and place in question here, a motive of the Defendant if any, the intent of the Defendant if any, at the time and place, a system that is planned or designed by the Defendant if any, at the time and place in question in this action, any special defenses that the Defendant may have had or put forward to you in this case, guilty knowledge if any of this Defendant at the time and place in question here, identity of the crime if any because of action here, any one or all of these things you may consider with the total evidence. Not that he is guilty or innocent of this offense, but for the reasons that I gave you here and the purpose that I have delineated to you."
(R. 188-189)
 II
Appellant asserts he was denied the right to a speedy trial because of a continuance granted in his case which passed his trial from the February 1982 court term to the May 1982 court term at the State's request. He alleges he was specifically prejudiced thereby because the delay extended through the abrogation of the two-for-one juror strike enacted by revision of § 12-16-100, Code of Alabama 1975.
An abbreviated chronology of events preceding appellant's ultimate trial date, as revealed by testimony and the judgment entry, is as follows:
July 25, 1981: The prosecutrix was sexually abused by appellant.
July 27, 1981: The prosecutrix filed a complaint against appellant with the Cullman County Sheriff Department.
July 28, 1981: A warrant was issued and appellant arrested.
August 25, 1981: Appellant filed a motion for a preliminary hearing.
November 9, 1981: The preliminary hearing was held.
January 8, 1982: Appellant was indicted.
January 25, 1982: Appellant was appointed counsel by the Court after he was determined to be an indigent; appellant was arraigned and a not guilty plea was entered in the presence of his counsel.
January 29, 1982: Appellant's motion for a continuance and an election was denied.
February 8, 1982: Appellant's retained counsel first appeared; appellant's motion for extension of time denied, and case set *Page 1121 
for February 10, 1982 with appointed counsel to remain in the case also.
By further court order, case continued on State's motion because of witness problems and because another case against appellant was continued on appellant's motion; case reset for March 22, 1982. Appellant's counsel apparently orally entered their objection to the Court's continuance, after being informed of the Court's action.
March 24, 1982: Court appointed counsel discharged from representation of appellant.
March 26, 1982: Case continued because appellant was being tried on another case during the March 22, 1982 jury week.
April 13, 1982: Two State's witnesses, having been served, failed to appear and were ordered attached and brought before the Court.
May 12, 1982: Case called for trial and a one day continuance was granted to the State because of the absence of one witness; appellant's oral motion for dismissal of charges for denial of a speedy trial was denied.
May 13, 1982: Appellant's motion for application of §12-16-100, Code of Alabama 1975 or in the alternative, for dismissal; appellant's case proceeded to trial, which resulted in his conviction on May 14, 1982 of sexual abuse, first degree.
As outlined in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), the four balancing factors for assessing denial of a speedy trial are as follows: (1) the length of the delay, (2) the reason for the delay, (3) the assertion by the defendant of his right, and (4) the prejudice resulting to the defendant.
In order to trigger an inquiry into the latter three factors delineated in Barker, supra, the length of the delay must in itself by "presumptively prejudicial." McCallum v. State,407 So.2d 865 (Ala.Cr.App. 1981). Because the speedy trial right is activated for and extended to one who has become "an accused," either by formal indictment or actual restraint pursuant to arrest, it appears the triggering date for appellant's right to a speedy trial was July 28, 1981, the date of his arrest.McCallum, supra. The length of delay in appellant's trial was approximately nine and one half months, as computed from his arrest on July 28, 1981 through his trial on May 13, 1982.
Considering the case history, as delineated above, as well as appellant's failure to assert his right to speedy trial prior to the case being called on May 12, 1982 and being continued for trial to May 13, 1982, we find this delay was not "presumptively prejudicial." McCallum supra. No inquiry into the remaining three Barker factors is mandated. Watson v.State, 389 So.2d 961 (Ala.Cr.App. 1980).
We point out that appellant failed to demonstrate, either on or before trial, or on appeal, that any prejudice resulted to him from the delay. See McCloud v. State, 412 So.2d 1266
(Ala.Cr.App. 1982). As this Court has recently opined, the two-for-one juror strike involves a procedural process only. "The jury striking process, being procedural in nature, rather than jurisdictional or substantive, is governed by the law in effect on the trial date." Terrell v. State, 429 So.2d 656, 659
(Ala.Cr.App. 1982).
No error harmful to the substantial rights of appellant having been demonstrated on appeal, this case is affirmed.
AFFIRMED.
All the Judges concur.