The appellant was convicted of the murder of his wife and was sentenced to 20 years' imprisonment.
 I
The appellant alleges that the trial court erred by denying his motion for judgment of acquittal on the grounds that the State failed to present sufficient evidence to sustain *Page 6 
his conviction. He further alleges that the trial court erred in denying his motion for the affirmative charge at the conclusion of the evidence.
However, the State presented sufficient circumstantial evidence from which a jury could reasonably find that the evidence excluded every other reasonable hypothesis but that of guilt. Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). The victim was killed by a gunshot wound to her head in the bedroom of her home. The State presented evidence that the appellant and the victim were alone in the house when she died. Moreover, the State presented the testimony of a neurosurgeon who stated that although the victim's wound could have been self-inflicted, it would have been difficult for the victim to inflict such a wound.
The State also introduced evidence tending to show a consciousness of guilt by the appellant through testimony concerning a number of contradictory statements that he made concerning his conduct during the incident and concerning the victim's reasons for allegedly committing suicide. The ambulance driver, who was present at the scene to attend to the victim, testified that the appellant told him that the victim had locked herself in the bedroom and had shot herself. However, when the police entered the home, they found that a coffee table and some artificial flowers had been turned over, another small table had been broken, a .22 caliber pistol was lying on the end of the couch with a clip next to it, and another clip was lying on the floor under a table by the couch. The bedroom door was open and three holes had been knocked in the top of the door. A .25 caliber pistol was lying partially under the bed and another .25 caliber pistol was lying on the floor on the other side of the bed. The gun found on the right side of the bed was subsequently identified as the weapon that caused the victim's death. That gun had been purchased by the victim. The .22 caliber gun in the living room was not loaded, but the second gun found in the bedroom was loaded.
A nurse at the intensive care unit where the victim was admitted testified that the appellant told her that he had had an argument with the victim and that she had locked herself in the bedroom. The nurse also testified that, on the night of the shooting, she observed the appellant holding the victim's hand and saying that he did not mean to "do this" to her. The nurse further testified that she saw the appellant later in that same week. She testified that this time in recounting the shooting, he told her that he and his wife had been having an argument and were scuffling over her purse. He stated that the victim took the gun out of her purse, went into the bedroom, locked the door, and shot herself. She testified that he told the nurse that he was going to sleep on the couch when he heard a gunshot in the bedroom and that he kicked the door down and found the victim after she had been shot. The day after the shooting, the appellant went to the police station and gave a statement indicating that he and his wife had an argument. After they went to bed, the appellant stated that he got up and went to the couch. Shortly thereafter, he stated, the victim entered the living room, instructed the appellant to shoot her or, in the alternative, she would shoot herself. She then threw a .22 caliber gun at him. He stated that she ran back down the hallway and entered the bedroom. He stated that he heard a pistol cock, ran down the hall, hit the door to knock it open, and then observed the victim shoot herself.
The appellant's daughters both testified that the appellant had initially made statements indicating that he had "done it," but quickly changed his statements to indicate that the victim had "done it." A friend of the victim testified that she had heard the appellant say that it was all the victim's grandmother's fault and that "[t]he same thing that was done to [the victim] should be done to her."
The State also presented evidence that the appellant gave inconsistent statements concerning the victim's reasons for committing suicide. He told the police that the victim believed that he was having an affair *Page 7 
with a younger woman. He told the nurse that the victim was depressed over one of her daughter's pregnancies. He told his pregnant daughter that the victim thought that she might have had cancer.
The State also presented evidence that the victim had previously told a friend that if anything ever happened to her, she would like her friend to tell police that her husband had threatened that if she ever attempted to leave him, he would put a gun to her head and kill her, making her death appear to be suicide. The friend testified that the victim had told her that she planned to leave the appellant.
The State also presented testimony from the appellant's former wife that in 1981 he threatened to kill her with a .22 caliber gun in their bedroom, by holding the gun to her head. She testified that he threatened her in this manner four or five times before they divorced.
The State presented sufficient circumstantial evidence to submit to the jury. "The inference from consciousness of guilt ta 'guilty' is also available in evidence." 1A Wigmore,Evidence 173 (Tillers rev. 1983). Although the coroner testified that the victim's wound was consistent with a self-inflicted wound and the neurosurgeon testified that it would not be impossible to inflict such a wound on one's self, a jury might reasonably find, from the evidence presented, that the evidence excludes every other reasonable hypothesis but that of guilt. The question is not whether the evidence actually excludes every such hypothesis, but whether a jury might reasonably so conclude. Cumbo v. State, supra, at 874. Therefore, the trial court did not err in denying the appellant's motion for the affirmative charge at the conclusion of the evidence.
 II
The appellant argues that the trial court erred in allowing the appellant's former wife to testify that, six years prior to the instant shooting, the appellant had pressed a .22 caliber pistol to her head, in the same spot at which the victim's wound was inflicted and had threatened to kill her. She also testified that this incident had occurred in their bedroom, while they were alone, and that he had exhibited the same behavior in the same manner on four or five other occasions.
The record indicates that, during the opening statement by the prosecution, the defense counsel requested a sidebar conference at which he objected to the prosecution's making any statement to the jury concerning the statements of the appellant's former wife concerning the appellant's prior bad acts. The State argued that the testimony was admissible as an exception to the exclusionary rule, in that it tended to show motive, scheme, or intent. The defense counsel objected on the ground of remoteness and because the prejudicial effect of the testimony outweighed any relevance. The trial court responded that the defense counsel's objection went to the weight to be accorded the evidence and not its admissibility. The trial court then stated that, before the appellant's former wife testified, the attorneys for both sides were to submit briefs on their positions. Subsequently, the trial court concluded that the cases cited by the appellant in his brief were distinguishable. The appellant's former wife was allowed to testify concerning the appellant's prior bad conduct.
The appellant's prior misconduct was not too remote to be admissible. Cf. Ex parte Cofer, 440 So.2d 1121, 1124 (Ala. 1983) ("a single rape which occurred 10 years prior is too remote to be probative of the issue"). "Remoteness is a relative standard, varying in its application according to the facts of each particular case. Palmer v. State, 401 So.2d 266
(Ala.Crim.App.), cert. denied, 401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922 [102 S.Ct. 1280, 71 L.Ed.2d 463] (1982)." Pride v. State, 473 So.2d 576, 578 (Ala.Cr.App. 1984). In Brewer v. State, 440 So.2d 1155 (Ala.Cr.App. 1983), this court held that the passage of seven years precluded the offense from being considered part of the res gestae of the prior offense, and noted that "that degree of remoteness alone does not operate to exclude the prior act, see Cofer v. State,440 So.2d 1116 (Ala.Cr.App. 1983), and affects *Page 8 
its weight rather than its admissibility. See Wharton'sCriminal Evidence § 260 at 621 n. 14 (C. Torcia 13th ed. 1972)." 440 So.2d at 1159. Thus, as indicated by the trial court, the seven-year span between the prior bad acts by the appellant and the instant charged offense should be considered by the jury in weighing the evidence, rather than affecting its admissibility.
The prior bad acts by the appellant were admissible in the present case under the identity exception to the exclusionary rule.
 "The general rule is that evidence of other or collateral crimes is not admissible as substantive evidence to establish the guilt of the accused of a particular crime, but exceptions to this rule exist. Twilley v. State, 472 So.2d 1130
(Ala.Cr.App. 1985); Miller v. State, 405 So.2d 41
(Ala.Cr.App. 1981); Thompson v. State, 374 So.2d 377 (Ala.Cr.App. 1978), aff'd, 374 So.2d 388 (Ala. 1979); Wilkins v. State, 29 Ala. App. 349, 197 So. 75, cert. denied, 240 Ala. 52, 197 So. 81 (1940); C. Gamble, McElroy's Alabama Evidence, §§ 69.01(1)-(11) (3d ed. 1977). The general exclusionary rule referred to above does not work to exclude evidence of all crimes, only such as are offered to show the defendant's bad character. If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by a showing of bad character, then proof of such other act is admissible. McKenzie v. State, 250 Ala. 178, 33 So.2d 488 (1948); Wilkins v. State, supra; McElroy's, § 69.01(1)."
Saffold v. State, 494 So.2d 164, 172 (Ala.Cr.App. 1986).
 "The following language concerning the identity exception is found in McElroy's, supra, at § 69.01(8):
 " 'All evidence tending to prove a person's guilt of the now-charged crime may be said to identify him as the guilty person. However, the identity exception to the general exclusionary rule is much more specific in that it contemplates the situation where the now-charged crime was committed in a novel and peculiar manner and the State is allowed to show that the accused has committed other similar offenses, in the same novel and peculiar manner, in order to show him the perpetrator of the now-charged crime.'
 "In other words, evidence of a prior crime is admissible only when the circumstances surrounding the prior crime and those surrounding the presently charged crime 'exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person.' Brewer, 440 So.2d at 1161."
Ex parte Arthur, 472 So.2d 665, 668 (Ala. 1985). (Emphasis added in Ex parte Arthur.)
In the present case, the appellant's prior threats to his then-wife's life, by pressing a .22 caliber pistol to the same spot in her head at which the victim's wound was inflicted, while in their bedroom, while they were alone in their home, is relevant to the presently-charged crime. Popwell v. State,480 So.2d 41, 43 (Ala.Cr.App. 1985). Further, that evidence tends to prove an element that is at issue in the charged crime, i.e., the identity of the person who pulled the trigger. The appellant, by claiming the victim committed suicide, clearly placed the identity of the murderer at issue. Moreover, the circumstances of the previous threats mirror those in the instant case and are sufficiently "novel and peculiar" to merit the admission of the evidence pursuant to the identity exception.
"If the evidence is not so remote as to lose its relevancy, the decision to allow or not allow evidence of collateral crimes or acts as part of the State's case-in-chief rests in the sound discretion of the trial judge. McGhee v. State,333 So.2d 865 (Ala.Cr.App. 1976); McDonald v. State, 57 Ala. App. 529, 329 So.2d 583 (1975), writ quashed, 295 Ala. 410,329 So.2d 596 (1976), cert. denied, 429 U.S. 834, 97 S.Ct. 99,50 L.Ed.2d 99 (1976)." Nicks v. State, 521 So.2d 1018, 1026
(Ala.Cr.App. 1987), affirmed, 521 So.2d 1035 (Ala. 1988), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, *Page 9 101 L.Ed.2d 948 (1988). The trial court did not abuse its discretion by allowing the former wife's testimony into evidence.
 III
The appellant argues that the trial court erred in allowing a witness to testify to statements allegedly made by the victim one week prior to her death. The appellant argues that the testimony constituted illegal hearsay. The record indicates that a friend of the victim testified that the victim had stated, one week prior to her death, that the appellant had told her that he would put a gun to her head, kill her, and make it appear to be a suicide, if she attempted to leave him. The witness testified that the victim then indicated that she did plan to leave the appellant. However, we need not determine the merits of the appellant's claims as any error would be harmless, because the appellant previously allowed testimony during the trial, without objection, by another friend of the victim that, months before the victim's death, she stated that the appellant "had told her that if she ever tried to leave him, he would kill her and make it look like she did it herself." The victim further testified that "she said she wanted to leave him, but was afraid to." Thus, the appellant suffered no prejudice by the subsequent witness's testimony.Thompson v. State, 527 So.2d 777 (Ala.Cr.App. 1988); Lawrencev. State, 409 So.2d 987 (Ala.Cr.App. 1982).
 IV
The appellant argues that the trial court erred in allowing the State medical examiner to answer the prosecutor's question concerning the cause of death, because the answer was based on assumed and disputed facts. The record indicates that the medical examiner, who had classified the victim's death as a suicide on the death certificate, was asked, by the prosecutor, the following hypothetical question:
 "Assume the following facts, if you would. Shortly after Mary Anita Perkins [the victim] was shot on the night of July the 29th, 1987, the living room in the house where she is shot is disturbed to the extent that a coffee table is overturned, with items strewn on the floor, and an end table found in two pieces, the top separated from the legs, and a .22 caliber pistol and two slips containing eight bullets apiece were found also in that living room. Assume further that there are three fist indentations in the bedroom door and in the bedroom there are found two .25 caliber pistols, one on each side of the bed on the floor. Assume further, if you will, Doctor, that the Defendant gives a nurse at the hospital where the victim is treated two contradicting accounts of what occurred, and is further heard by the nurse saying this to the victim, or this in substance, I didn't mean to do this to you, I didn't mean to hurt you, and then to the nurse saying, I didn't mean to do this to her. Assume further, if you will, Doctor, that the Defendant makes the following statement: I don't know, I don't know. Maybe if I hadn't — I mean if she hadn't shot herself things might have been different. Assume further that the victim's statement to a friend regarding her concern that if she left the Defendant that the Defendant would kill her and make it look like a suicide. Assume further that on four or five occasions the Defendant placed the barrel of a pistol to the head of his first wife in the same location of the victim's wound and threatened to kill her. Assuming those facts, Doctor, would your ruling as to the manner of the death been [sic] suicide?"
The defense counsel then objected, stating that the prosecutor's hypothetical question was irrelevant, immaterial, and incompetent as it invaded the province of the court and jury, by calling for an opinion on the ultimate question at issue. The court responded that the jury had already been informed that "it's not for the lawyers, the doctor, or whoever to say whether it is a suicide and/or an unlawful homicide, it's for them to decide." The trial court then allowed the doctor to answer; the doctor responded, "I would have classified the death differently, yes."
Opinion testimony may be based upon a hypothetical question, which is *Page 10 
based upon facts already in evidence or facts to be subsequently admitted into evidence. Thomas v. State,455 So.2d 278, 281 (Ala.Cr.App. 1984), citing C. Gamble, McElroy'sAlabama Evidence, § 130.01 (3d ed. 1977), and cases cited therein. "Moreover, a hypothetical question need not mention all the facts as to which there was evidence. Alabama City G. A.R. Co. v. Bessiere, [197 Ala. 5, 72 So. 325 (1916)]; BurnwellCoal Co. v. Setzer, [191 Ala. 398, 67 So. 604 (1914)]"Kozlowski v. State, 248 Ala. 304, 307, 27 So.2d 818, 821
(1946). " 'In general, the proper form of a hypothetical question asked of an expert, when [allegedly] based on evidence in the case, rests largely on the sound discretion of the trial court, and that court will not be put in error unless the discretion is abused.' White v. State, [294 Ala. 265,314 So.2d 857 (1975)]." Bracewell v. State, 447 So.2d 815, 826
(Ala.Cr.App. 1983), affirmed, 447 So.2d 827 (Ala. 1984), cert. denied, 469 U.S. 980, 105 S.Ct. 382, 83 L.Ed.2d 318 (1984).
Furthermore, the record indicates that prior to trial the State filed a motion in limine asking that the medical examiner's listing of suicide as the manner of death in the autopsy report and on the death certificate not be referred to during trial, and a hearing was held thereon. The trial court noted in addressing the State's motion in limine:
 "It says in effect, paragraph 2, that the State is informed and believes the Defendant intends during the course of the trial to introduce evidence or make reference to the fact that suicide was listed as the manner of death in the autopsy report and in the death certificate; that the aforementioned evidence concerns the ultimate fact in issue, whether the Defendant shot the deceased or she shot herself, but upon which an expert may not give his opinion. To allow an expert to give his opinion as to the ultimate issue in the case would usurp the functions and invade the province of the jury."
During the hearing on the motion, the defense counsel noted that the State had a right to cross-examine the witness "and try to show that his opinion was flawed." The Court subsequently held the following:
 "I'm not going to just cart blanche grant the motion in limine, but what I'll tell the jury is that the whole question for them to decide in this case is whether the deceased was shot by the Defendant or whether in fact she shot herself, and no doctor and no lawyer will make that determination, they will.
 "Now, if he [defense counsel] mentions that in opening statement, I will interrupt him and state that. If he doesn't mention that in opening statement, then I'll keep my mouth shut. But whenever it's made — and it's going to be made, we all know that — whenever it's made, I'll tell the jury what I just said."
Evidence concerning the medical examiner's statement on the death certificate as to the victim's cause of death was initially introduced by the appellant.
"A party cannot assume inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings which was invited by him or was a natural consequence of his own actions. 24A C.J.S. Criminal Law § 1842 (1962). See alsoBrannon v. State, 12 Ala. App. 189, 67 So. 634, 635 (1914), cert. denied, 191 Ala. 29, 67 So. 1007 (1915); Livingston v.State, 7 Ala. App. 43, 61 So. 54, 57 (1912) (on rehearing)."Leverett v. State, 462 So.2d 972, 976-77 (Ala.Cr.App. 1984). See also Gibson v. State, 555 So.2d 784, 797-98 (Ala.Cr.App. 1989). Thus, the appellant could not at trial argue that the medical examiner's opinion, based on his knowledge at the time of entering the cause of death on the death certificate, was admissible, despite the State's claim that such testimony went to the ultimate issue of fact; and subsequently, on appeal, argue that the State's introduction of the medical examiner's opinion as to the victim's cause of death, based on a hypothetical question derived from evidence presented at trial, is inadmissible as addressing the ultimate fact in issue. *Page 11 
 V
The appellant argues that the trial court erred in stating, after the State rested and before the defense began, that it would not charge on any lesser included offenses. However, the record indicates that after the trial court stated that it was going to be "murder or nothing," the defense counsel replied, "I think under the facts of the case that's what it comes down to." The appellant made no objection to the trial court's statement; rather he agreed with the trial judge's assessment. Thus, the appellant is precluded from raising this argument on appeal. Holmes v. State, 497 So.2d 1149 (Ala.Cr.App. 1986);Daugherty v. State, 527 So.2d 1364 (Ala.Cr.App. 1988).
AFFIRMED.
All the Judges concur.