283 So.2d 458

**Elvis HEADLEY**

**v.**

**STATE.**

**6 Div. 50I.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

William J. Baxley, Atty. Gen., and David Lee Weathers, Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Jefferson County, Alabama, indicted appellant for murder in the first degree. The Jury's verdict found him guilty of murder in the second degree and judgment set punishment at 30 years in the penitentiary.

Pauline Caldwell Headley, wife of appellant, died of a gunshot wound on the night of June 24, 1972, at her home in Bessemer, Alabama. The evidence showed that on the day of the shooting appellant came home early from work and he and the deceased along with deceased's daughter, Darlene Morris, went to Jemison, Alabama, to visit relatives. Darlene testified that

Fred Blanton, Birmingham, Joe G. Burnett, Clanton, for appellant.

**150**

during the visit appellant was drinking beer. They returned home about 10:00 that night, having stopped once for more beer. Upon arriving Darlene went to bed and appellant and Mrs. Headley went next door to visit. Mrs. Fay Kimball, the next door neighbor, testified that both were drinking beer and arguing about money and a vacation they were planning on taking the next day. Shortly before 11:00 appellant and Mrs. Headley left to buy more beer. Darlene was awakened about 12:00 by appellant and the deceased "fussing". She went into the dining room where she observed her mother and appellant cursing at each other. She testified that this continued for 10 or 15 minutes. Darlene then heard appellant tell the deceased that "he was going to stomp her." Mrs. Headley then went to a closet and got a 12 gauge, single-barrel shotgun and walked into the bedroom and sat on the bed. Appellant left through the front door and Mrs. Headley told Darlene to lock the doors, which she did. Appellant then "kicked the back door open and came in cussing," taking the gun from the deceased. Darlene testified that "he grabbed the barrel of it and snatched it." He then "started cussing and pointed it at her." Darlene stated that her mother told appellant the gun was loaded, but that he just stood there about three minutes pointing the gun at the deceased and cussing. She again told appellant, "Put the gun down, it's loaded." Darlene further testified that she saw the gun fire and her mother fall over on the bed.

Mrs. Kimball testified that appellant came to her house and asked her to call the police because he had shot his wife. She stated that when he came in, appellant said, "Oh, my God, Fay, help me. I've shot my wife, I shot Pauline. I love Pauline, I don't know why I shot her."

. Mr. C. R. Reeves, a coroner for Jefferson County, whose qualifications were admitted, testified that he had examined the body of Mrs. Headley at the Memorial Hospital in Bessemer on the night of the shooting. He stated that the "whole top of her head was blown off." He further stated that he had taken a blood sample from the victim which had been sent to the Department of Toxicology to determine the alcoholic content. The report stated that through microchemical analysis of the blood it was determined that there was 0.10 percent ethyl alcohol therein.

Chief W. L. Smith of the Lipscomb Police Department testified that he had administered a "drunk-meter" test to the appellant at 2:10 a.m. on the night of the shooting and the results showed a 0.12 percent content.

Greg Marler testified that he knew both the appellant and the deceased. He stated that about a week before the shooting he had had a conversation with appellant at the Martin Cafe during which appellant said that "if he ever had anything else to do with her that he'd kill her."

Sgt. G. N. Franklin of the Bessemer Police Department stated on cross-examination that he had taken a statement from appellant which was read into evidence. Included in the statement was the following sentence: "I remember Darlene kept hollering that the gun was loaded." However, when appellant took the stand in his own behalf he claimed Darlene was lying when she testified that she and her mother had told him the gun was loaded. He stated that he was unaware the gun was loaded. He also claimed that Greg Marler and Mrs. Kimball were lying and denied making the statement "I don't know why I shot her."

I

Appellant first assigns as reversible error the fact that formal arraignment was waived.

The minutes on trial show the following:

"On this the 18 day of September, 1972, in open Court came the State of Alabama by its Deputy District Attorney

and the Defendant in his own proper person and with his attorney, Defendant on this date waives formal arraignment and it is;

Ordered and adjudged by the Court that this case be and the same is hereby passed to December 4, 1972.

On this the 4 day of December, 1972 in open Court came the State of Alabama by its Deputy District Attorney, and the Defendant in his own proper person, and with his attorney, and the defendant having heretofore on the 18 day of September, 1972 waived formal arraignment on the indictment in this case charging him with the offense of Murder to which indictment the defendant pled not guilty, this case having been regularly set for trial this date."

■ Appellant admits that an accused may waive his right to a copy of the indictment under Article 1, § 6 of the Constitution of 1901, Howard v. State, 146 Ala. 149, 41 So. 301; and Robinson v. State, 44 Ala.App. 206, 205 So.2d 524, but argues that if he does so the Record must affirmatively show that the indictment was read and explained to the accused informing him of the nature of the charge against him.

■■ The common law formalities attendant on arraignment are no longer required. Boyd v. State, 41 Ala.App. 507, 138 So.2d 60. Its only purpose is to obtain from the accused his answer or plea to the indictment. Howard v. State, supra.

Our Supreme Court in Fernandez v. State, 7 Ala. 511 stated:

" . . . . It is not indispensable to the regularity of the conviction, that the accused should be formally arraigned. If he is advised of the offense with which he is charged, and is prepared without hearing the indictment read, to answer it, he may plead."

■ The appellant was represented by able counsel, he was aware of the charge of murder against him and he entered a plea of not guilty. We cannot see any injury to the rights of appellant. Paris v. State, 36 Ala. 232.

II

At the conclusion of the State's evidence seven witnesses testified on behalf of the appellant to the effect that the deceased had a reputation for being " a mean woman", a "vicious person" and a "bloodthirsty, violent type".

■ The general rule is that in a prosecution for homicide, if the evidence tends to show that the accused was justified under the right of self-defense he may prove the victim's bad general reputation for peace and quiet, for violence, or a like trait, as tending to show that the victim was the aggressor. McGuff v. State, 248 Ala. 259, 27 So.2d 241; Dolan v. State, 81 Ala. 11, 1 So. 707.

■ On cross-examination of these same witnesses the state attempted to elicit from them information concerning the defendant's reputation for peace and quiet and how many times he had "been in jail for breach of peace or attacking somebody." This was error to do so. The State cannot make this type of inquiry unless the defendant has first put his character for peacefulness in issue by attempting to prove it good. Dolan v. State, supra; Bedsole v. State, 274 Ala. 603, 150 So.2d 696; and Sorrells v. State, 44 Ala.App. 481, 213 So.2d 687. The appellant had not put his own character in issue; however, in view of the fact that all of the witnesses answered in the negative to the improper inquiries, the error was harmless. Houston v. State, 50 Ala.App. 536, 280 So.2d 797 (1973); Johnson v. State, 260 Ala. 276, 69 So.2d 854.

III

■ There is present in this record error necessitating reversal. In rebuttal, the State introduced the testimony of one Au-

brey Morrison, a deputy with the Chilton County Sheriff's Department. In connection with his testimony, the State was allowed over objection to introduce into evidence an arrest record showing a charge of assault with intent to murder against the appellant. The disposition of this case was not shown nor did the witness have any knowledge of it. We feel the trial court committed reversible error in allowing this into evidence.

 The general rule was stated in White v. State, 40 Ala.App. 613, 119 So.2d 344, as follows:

"For the purpose of attacking his credibility, a witness, or a defendant when testifying in his own behalf, may be examined on cross-examination as to a former conviction of a crime involving moral turpitude, and if denied, such conviction may be proven by the court record of conviction or a properly certified copy thereof, but it cannot be established by oral testimony. Title 7, Secs. 434, 435, Code of Ala. 1940; Love v. State, 36 Ala.App. 693, 63 So.2d 285; Ellis v. State, 244 Ala. 79, 11 So.2d 861; Wright v. State, 38 Ala.App. 64, 79 So. 2d 66, certiorari denied 262 Ala. 420, 79 So.2d 74. But whether accused has been guilty of wrongful conduct or the commission of an offense for which there has been no conviction is not a proper inquiry. Davis v. State, 21 Ala.App. 637, 111 So. 314."

And in Davis v. State, supra, the court further stated:

". . . . The mere fact that an accused had been arrested on several former occasions upon a similar charge is not a proper inquiry. Karackalas v. State, 18 Ala.App. 181, 89 So. 833. A former conviction may be shown under relevant conditions, but the mere arrest of a man, without more, sheds no light upon his guilt or innocence on the trial of a case, nor should it be allowed or considered in order to militate against the weight of

his evidence or credibility as a witness. That such inquiry before the jury was hurtful cannot be doubted, and, being erroneous, the judgment of conviction cannot stand."

For the reasons stated above, the judgment of conviction is due to be reversed, and the cause is hereby remanded.

Reversed and remanded.

All the Judges concur.