TYSON, Judge.
The indictment charged the appellant with forcibly ravishing Martha Jean Johnson. The jury found the appellant guilty as charged and set punishment at life imprisonment. The trial court entered judgment in accordance with this verdict. The appellant’s motion for a new trial was duly overruled after a hearing thereon.
The appellant through counsel filed a petition to be treated as a youthful offender averring his age to be twenty years, and following a hearing thereon on August 11, 1975, this petition was denied.
Earl King testified that he was eighteen years of age and had been arrested on the late evening of March 9-10, 1975. He testified that he had been riding in an automobile with the appellant, Turner Lee Rogers, and one Billy Wayne Baker, who was the driver of the 1966 Ford automobile. King testified that the automobile in question belonged to him and that the three men were driving toward Huntsville, Alabama, on Highway 72 when they saw one Martha Jean Johnson and another girl walking along the side of the highway near the Hickory House Restaurant. King testified he was sitting on the back seat of the car that Baker was driving and that the appellant was sitting on the right hand front seat. He testified that they pulled up beside where the two girls were walking and that they were headed in the direction of Athens, Alabama. He testified that it was the appellant, Rogers, who had asked the driver to turn the car around and see if the girls wanted a ride. He stated that Rogers asked the girls if they wanted a ride and they answered no, that they were just going up the road a little piece. He stated that a few moments thereafter Rogers jumped out of the car as the girls started to run and pulled one of them inside the car on his lap and that she was screaming and trying to pull loose. He testified that the other girl leaned down and threw a rock which struck Rogers and that the other girl ran away. He testified that Rogers pulled the Johnson girl into the car with her feet hanging out of the door and told Baker to drive off. He testified that the girl’s feet were dragging the pavement and that she screamed, “stop, my feet is dragging the ground,” and that they slowed down and Rogers pulled her into the car.
King testified that they then drove the car down a dirt road and turned into a field off Lindsey Lane Road. At this point, Baker stopped the car, and the appellant, Rogers, got into the back seat with the girl. He testified that Rogers was a big man, weighing over 200 lbs. and that there was a struggle and that the girl said to please not hurt her as she had two children at home. He testified that Rogers had intercourse with her and that after he finished, he, King, then had intercourse with her as did Baker, the driver of the car. He testified that she asked each of *741 them not to hurt her as she had two children at home. King testified that the appellant, Rogers, had pulled the Johnson girl’s blue jeans from her and pulled off her underclothes before and that he was the first one to have intercourse. He testified that he had plead guilty in this case and that he was eighteen years of age and had been sentenced to ten years imprisonment. He testified that when they finished, they were driving down a road in the general direction of Pete’s Corner when another car began chasing them and that they ran off into a field and that they were doing 80 or 90 m. p. h. and that the appellant, Rogers, had said, “the cops are after us.” He said that after the car wrecked, the men told them to lay on their stomachs, which they did, and they were later handcuffed and taken to jail.
Brenda McGee testified that she and Martha Jean Johnson had been over to Huntsville, Alabama, and had stopped in a couple of beer joints and had a beer or two. She testified they were driving back toward Athens, Alabama, near the Hickory House Restaurant when they ran out of gas. She testified they began walking in the direction of Athens when a blue Ford with three colored men in it pulled up and asked them if they wanted a ride and they replied no.
Brenda McGee further testified that they started walking faster when the largest of the three men, she identified in court as the appellant, jumped out of the car and grabbed Miss Johnson and pulled her toward the car. She stated that she picked up a rock and threw it at him and then began to run. She stated that she saw Miss Johnson struggle and heard her scream and that the three men took off in the car pulling her into it, that she saw Miss Johnson’s foot dragging. She stated that after running, she finally came across one Bobby Joe Knox who was a friend of her brother and that he took her to the Sheriff’s office in Athens where she reported what happened. She testified that when she last saw Miss Johnson her foot was dragging the pavement and that she did not see her again until late that evening in the hospital in Limestone County.
On cross examination, Miss McGee testified that she and Miss Johnson had a couple of beers at the Peppermint Lounge in Huntsville before they started back toward Athens. She testified she had not seen any of the three colored boys before the night of March 9, 1975.
Doctor E. G. Norwood testified that he was a physician at the Athens-Limestone County Hospital and was a licensed medical doctor practicing as an internist. He testified that on the night of March 9 or early morning of March 10, he examined Martha Jean Johnson at the emergency room of the hospital. He testified she had a deep abrasion on the top of her right foot and right knee and had some scratch marks on her hands and lower part of her chest and stomach, that there was a cut inside her lower lip and that she had a severe bruise on her head and a bad bump. He said that he made an internal examination of Miss Johnson with her permission and that her “perineum was abnormally red.” He said there was a large amount of vaginal secretion and that this was consistent with recent intercourse within the last thirty minutes to an hour. He said that his findings were that this would be consistent with intercourse with three men and that the longest period of time that it could have been would be perhaps twelve hours. Doctor Norwood testified that a smear was taken of the secretion and sent to Barbara Morgan, the laboratory technician.
Doctor Norwood further testified that he administered some penicillin and several shots which were to prevent venereal diseases and also to prevent conception. He testified that that same evening, he also examined the appellant, Turner Lee Rogers, who was complaining mostly of a severe headache and chest pains, that the appellant appeared to be dazed and that he *742 examined him and made a skull X-Ray but that his vital signs were normal, and that he told him of being in an automobile accident that night. He testified that the appellant and the other two men were black and that Miss Johnson was white.
On cross-examination, the doctor stated that the lacerations about Miss Johnson’s face and head were consistent with being in an automobile accident, but that the abrasions on her knee and foot were consistent with being dragged on the pavement.
During the cross-examination of Doctor Norwood, the trial court ruled that the appellant could see the medical records of the victim Miss Johnson for the period of thirty days prior to the examination of Doctor Norwood at the hospital and all medical records subsequent to March 9, 1975, but would not permit appellant’s counsel to obtain medical records more than thirty days ■ prior to the incident.
Steve Brooks testified that he was riding with Mark Lucas and Ernest Johnson when they heard a police radio dispatch about a girl being kidnapped by three colored boys driving a blue Fairlane Ford over their C.B. radio. After driving a few minutes out Highway 72, they drove down Lindsey Lane and got a flashlight. He testified that sometime thereafter, a blue Fairlane Ford came past them, and they turned around and began pursuing and radioed that they were in pursuit of the automobile. Brooks testified that at times the speedometer indicated that they were doing over 100 m. p. h. and that Lindsey Lane made a dead end with an intersection known as Pete’s Corner, and they slowed down as the car they were pursuing made that turn. He stated that they stayed in pursuit for about five miles when the car ran off the road and out into a field and wrecked. He stated that none of the men were armed, that they jumped out with flashlights and told the men to halt and to lay down on their stomachs, that they then called for the Sheriff’s deputies.
Brooks further stated that the wreck occurred about a quarter of a mile west of Pete’s Corner and that when they pulled up, the Johnson girl was in a state of shock and was trying to get out of the automobile and was saying, “Don’t hurt me. Don’t do it anymore.” He testified that they stayed there and within a few minutes, two car loads of officers came up and arrested the three men. Brooks’ testimony was corroborated by Lonnie Merren.
Deputy Bobby Smith, of the Limestone County Sheriff’s Department, testified that on the night of March 9, 1975, he received information over the radio dispatch that some men had been in pursuit of a 1966 blue Fairlane which had wrecked about 200 yards west of Mooresville Road on the Huntsville-Brown’s Ferry Road, that this was shortly before 11:00 o’clock that night. He testified that when he arrived, three black males were lying on the ground and that Miss Johnson was getting out of the automobile. . He testified that he handcuffed Earl King and went to see about Miss Johnson. He testified that Officer Daly handcuffed the appellant, Rogers. Smith testified that Miss Johnson was crying and blood was coming from her mouth and scratches were on her face.
Smith further testified that he found the barrel of a .410 gauge shotgun on the back seat of the wrecked car. He testified that he and the other officers took the three men to the Limestone County Jail and then to the hospital that evening. This testimony was corroborated by that of other officers.
The pap smear made on the night of March 9, 1975, at the emergency room of Limestone County Hospital which showed “many sperm present” was stipulated into evidence.
The victim, Martha Jean Johnson, testified that she was twenty-four years of age on the night of March 9, 1975. She testified that she and Brenda McGee had driven over to Huntsville and gone to a beer *743 joint and had a couple of beers and were driving back toward Athens when they ran out of gas. She testified that she had never been out with any black men in her life, but that on one occasion she and Brenda had gone into a beer joint with their dates in which some other black men were, that neither of them danced or had any contact with any black men.
Miss Johnson testified that on the night of March 9, she and Brenda were walking down the highway toward the Hickory House Restaurant when a 1966 Ford pulled up and three colored men were in it. She testified that the appellant asked, “Do you want a ride,” and that she told them, “No.” She testified that the appellant opened the door and grabbed her and when she tried to pull away, he drug her toward the car and as he did, she saw Brenda throw a rock which hit appellant. The appellant then jerked her into the automobile, and she was laying over his lap with her legs dragging out of the car, that she had on a sandal with rubber sole and that she was wearing blue jeans and a white shirt. She testified that she begged him that her legs were dragging and they slowed down and pulled her into the car.
Miss Johnson testified that after getting in the car, they drove down near a field and that her foot and knee had been scraped and cut. She further testified that the appellant put her in the back seat of the car and got in with her and removed her blue jeans and underclothes, that she fought and struggled and that he forcibly had intercourse with her and that she told him she had two children at home and not to hurt her. She testified that the other two men then also forcibly had intercourse with her.
Miss Johnson stated that they were driving back toward the road and the men were talking about what to do with her when another car began to follow them, and they began driving at a high rate of speed and the car wrecked. She said her lip was cut and her head bruised when she was found, but officers helped her get out of the car. Miss Johnson testified that she gave a statement to the officers describing the incident and was taken to the Limestone County Hospital for examination that night.
The appellant, Turner Lee Rogers, testified that he was twenty years of age on March 9, 1975. He testified that he was driving around with Earl King and that Billy Wayne Baker was driving the car. Rogers said that as they were driving out Highway 72, they saw two girls hitchhiking and that they slowed down and that Miss Johnson asked them to give them a ride and that as they slowed down, another car was coming and the other girl said it was her boyfriend and started running off. He said Miss Johnson got in the car and smoked a cigarette and had a beer with them.
Rogers further testified that they drove down a graveled road near a field and that Miss Johnson then got in the back seat and removed her clothes and that at no time did she protest, but that he did have intercourse with her. He testified at no time did he threaten her, neither did his companions and that each of the other two men also had intercourse with her.
Rogers testified that they were driving back from Lindsey Lane when they noticed another car was following them and they began driving at a high rate of speed. He testified that the car ran off into a field and that he had a severe lick on the head and was dazed. He denied that Miss Johnson’s foot or knee were dragging when she got in the car and that he did not grab her or pull her into the car. Rogers denied that Miss Johnson ever cried or protested and that the intercourse was at her consent.
Appellant also presented the character testimony of several witnesses who stated his character was good. Following the conclusion of the character testimony, the trial court after each side had rested per *744 mitted the State to reopen the case and present some rebuttal testimony which consisted of that of Deputy Sheriff Duey Bryant who found Miss Johnson’s key to her apartment on the person of the appellant when he examined the pockets at the Limestone County Jail and the testimony of Deputy Bobby Smith. Deputy Bryant also identified a pair of blue jeans, a pair of shoes, a white T-shirt, a bra and a pair of ladies pants which he testified were turned over to him by Miss Johnson the next day at her apartment and that he had to get her to get these out of the trash can.
Deputy Smith testified that he had found a .410 shotgun barrel on the back seat of the wrecked car on the night of March 9-10, 1975. This barrel was admitted into evidence.
The appellant then took the stand and denied that he had removed any items from Miss Johnson’s purse and that he only had about $4.00 and some change on him at the time of the accident.
I
The appellant first contends that as raised in his motion for new trial, the appellant was not arraigned in this cause and that the conviction is due to be reversed. Article 1, § 6, Constitution of Alabama 1901, in pertinent part reads as follows:
“That in all criminal prosecutions the accused has the right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof....”
On hearing the motion for new trial, the State presented the Bench Notes as set forth in the minute entry which indicate that the appellant first appeared with counsel on August 4, 1975, and had his rights explained to him in open court, that on this date, he filed a youthful offender petition which was set for hearing August 11, 1975. On August 11, 1975, the minute entry in pertinent part indicates the following:

“ . . . After hearing Y. O. Pet. the same is denied. Parties announce ready for trial. On arraignment def. pleads not guilty. Trial of case proceeds.

After other notations indicating the ruling on certain motions to produce, the minute entry is signed, “Newton B. Powell, Judge.”
Mr. David Patton, as counsel for the appellant, testified that while he was not present on August 4, 1975, his partner Mr. Legge was present. He has specific recollection that the appellant was not arraigned on the morning of August 11, 1975, nor was the indictment read, nor did the trial court ask how did they plead.
Deputy District Attorney Jerry Knight testified that he was present on both August 4, 1975 and August 11, 1975, before the Honorable Newton B. Powell. He testified that according to his notes which were made on arraignment day that defense counsel had waived the formal reading of the indictment and entered a plea of not guilty. He testified that according to his recollection and notes, Mr. Legge waived the reading of the indictment and entered a not guilty plea and that subsequently either Mr. Legge or Mr. Patton came over to the counsel table and asked for a youthful offender form, which he supplied then and that it was filled out and filed. Following the testimony, we find the following ruling by the trial court:
“THE COURT: All right, is there anything else either one of you have to offer? We will give you an opportunity to put this in the record. As I have stated — I am stating this for the record. I was the Trial Judge. Memories play tricks on everybody, but I am sure that in the opening statements that were made by the State and the indictment having been read, that the defendant entered his plea of not guilty and it’s on *745 the record and the record will stand like it is. I remember it. The record shows that it was that way and it will stand — I am going to leave it open. I will let you all see the rest of this stenographic record, but there is no question in my mind, as the Trial Judge, that a plea of not guilty was entered.
“MR. PATTON: Thank you.
“THE COURT: Anything else?
“MR. PATTON: That’s all, Your Honor.
“THE COURT: All right.”
In Headley v. State, 51 Ala.App. 148, 283 So.2d 458, this court indicated:
“The common law formalities attendant on arraignment are no longer required. Boyd v. State, 41 Ala.App. 507, 138 So.2d 60. Its only purpose is to obtain from the accused his answer or plea to the indictment. Howard v. State, 146 Ala. 149, 41 So. 301.
“Our Supreme Court in Fernandez v. State, 7 Ala. 511 stated:
“ ‘. . . . It is not indispensable to the regularity of the conviction, that the accused should be formally arraigned. If he is advised of the offense with which he is charged, and is prepared without hearing the indictment read, to answer it, he may plead.’
“The appellant was represented by able counsel, he was aware of the charge of murder against him and he entered a plea of not guilty. We cannot see any injury to the rights of the appellant. Paris v. State, 36 Ala. 232.”
We have carefully reviewed our opinion in Ludlum v. State, 52 Ala.App. 631, 296 So.2d 254, and the various authorities therein cited. In the instant case, however, the record supports the position of the trial court that in fact the appellant was arraigned in open court and entered a plea of not guilty. The fact that he may not have insisted upon a formal reading of the indictment is not fatal. Headley, supra.
The overruling of the appellant’s motion for new trial which challenged the arraignment was correct.
II
The appellant next cites as error the refusal of the trial court to grant his motion to produce the medical records of Miss Johnson more than thirty days prior to the incident in question which occurred on March 9, 1975. The appellant’s theory is that Miss Johnson may have received treatment as a result of other “affairs” and that she admitted that on cross-examination the two children were by different men and that she was not married to either.
However, there is no showing in this record that Miss Johnson had ever seen or been out with the appellant or either of his companions at any time prior to the incident in question which occurred on March 9, 1975.
Mr. Justice Harwood, then Harwood, P. J., of the former Court of Appeals, in Mabry v. State, 40 Ala.App. 129, 110 So.2d 250, cert. dismissed 268 Ala. 660, 110 So.2d 260, indicated:
“Perhaps the answer is best summarized in a statement by Cardozo, C. J., in People ex rel. Lemon v. Supreme Court of State of New York, 245 N.Y. 24, 156 N.E. 84, 85, 52 A.L.R. 200, wherein he observed:
“ ‘Documents are not the subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Docu *746 ments to be subject to inspection must be evidence themselves.’ ”
We are clear to the conclusion that the medical records sought in the case at bar were not relevant to any reasonably conceived issue to be tried, and the trial court’s ruling in this regard was proper. Davidson v. State, 48 Ala.App. 446, 265 So.2d 888, cert. denied 289 Ala. 741, 265 So.2d 897; Smith v. State, 282 Ala. 268, 210 So.2d 826; Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666.
Ill
Finally the appellant contends the trial court erred in allowing the case at bar to be reopened and rebuttal testimony presented by the State. We have carefully examined this record and determined that in accordance with Scott v. State, 246 Ala. 545, 21 So.2d 703, and authorities therein cited, that the trial court in its discretion properly allowed the State to reopen and present rebuttal testimony.
The rebuttal testimony consisted of the key to the victim’s apartment, found on the person of the appellant by the officers who charged him following the arrest, and of the clothing worn by the victim on the night of the incident in question. We believe the admission of this evidence to have been within the discretion of the trial court and in this cause entirely proper. Goldin v. State, 271 Ala. 678, 127 So.2d 375; Green v. State, 51 Ala.App. 654, 288 So.2d 191; Burt v. State, 54 Ala.App. 1, 304 So.2d 243, cert. denied 293 Ala. 749, 304 So.2d 246.
We have carefully examined the record as required by law and find no error therein. The judgment of the trial court is therefore affirmed.
AFFIRMED.
All the Judges concur, except CATES, P. J., concurs in the result.