Pearl Hampton, the appellant, was indicted for the first degree assault of Compton Owens. A jury convicted him of assault in the second degree. He received a ten-year split sentence, with one year to serve and the remaining nine years suspended for a period of five years' probation. Hampton argues that this conviction was barred under the principles of former jeopardy by a prior conviction involving a different victim because both victims were injured by the same shotgun blast.
On the evening of April 17, 1982, Huntsville Police Officers Billy Hancock and Compton Owens had just finished investigating a domestic disturbance at Hampton's residence in which Hampton had allegedly held Mary Jackson hostage at gun-point until she found his wallet. This disagreement was settled and Hampton, who had been drinking, was polite and cordial to the police. No arrests were made and Hampton returned to his residence. The officers returned to a patrol car to complete a case report.
At that time, one of Mary Jackson's sons reported that Hampton was "shooting". The two officers cautiously approached Hampton's front door. Before the officers reached the front porch a single shotgun blast rang out. Both officers were wounded by this single shotgun blast which went through the storm door of the residence and some shrubbery. When the officers were shot they were "in front of the door standing beside a bush." Sylvia Jackson, who was standing "all of the way across the street" behind a car "had a little buckshot in her hand."
In May of 1982, Hampton was tried and convicted in municipal court for assault in the third degree. That case involved Ms. Jackson.
In June, he was separately indicted for assault in the first degree in the cases involving Officers Hancock and Owens.
Hampton raised the issue of former jeopardy by a motion of autrefois convict filed before arraignment. After considering arguments and briefs presented by both parties, the trial judge overruled the motion. In June of 1983, Hampton was convicted for assault in the second degree for the shooting of Officer Owens.
In overruling the motion, the trial judge held:
 "The Court upon review of the aforesaid Motion, finds the question raised by it to be a matter of law and not of fact. Upon further review, it is the finding of this Court that the offenses of Assault in the First Degree, Code of Alabama, § 13A-6-20, and Assault in the Second Degree, Code of Alabama, § 13A-6-21, contain statutory elements requiring proof of additional facts which were not present in the action before the Municipal Court of Huntsville, Alabama, including but not limited to: (1) different victims, (2) circumstances *Page 151 
manifesting extreme indifference to the value of human life, (3) reckless act, and (4) serious physical injury."
Just as the facts are not disputed, so also the positions of the parties are clear. Hampton contends that a shotgun blast injuring three individuals is merely one crime with three victims. The State argues that there are three separate crimes arising from a single act.
There is a conflict of authority as to whether there may be more than one prosecution of one person, who, by a single shot or blow or by the same act, has killed or injured different persons. 22 C.J.S. Criminal Law § 298 (b) (1961). The courts have adopted three different attitudes in deciding whether multiple offenses were committed when a defendant assaulted more than one person by a single physical act.
 "In situations where a defendant assaulted or killed more than one person by a single physical act, many courts, applying the view that a single act affecting multiple victims constitutes multiple criminal offenses, have determined that more than one assault or homicide was committed. A number of these decisions indicate a judicial concern for protecting the integrity of each person harmed.
 "Under similar circumstances, other courts have applied the view that a single act affecting multiple victims constitutes a single criminal offense in deciding that a defendant, by engaging in but one single physical act, committed only one assault or homicide. The rationale underlying some of these cases is that to hold otherwise would often have the consequence that the defendant would be punished disproportionately for a single criminal act.
 "Faced with the question whether multiple offenses were committed when a defendant assaulted or killed more than one person by a single physical act, some courts have decided that multiple crimes are committed only if the defendant intended to harm more than one person."
 Annot., 8 A.L.R. 4th 960, 963 (1981). (footnotes omitted).
In Alabama, the courts have traditionally and consistently held that a single act resulting in death or injury to multiple victims constitutes a single criminal offense.
 "Sometimes as a part of a single transaction more than one offense is charged to have been committed. If a person does a single act which results in the injury or death of more than one person, only one offense can be fastened upon him. But if in that occurrence he shoots different persons by different discharges of his firearm, an offense can be fastened separately as to each person so injured or killed, although there was but one transaction, and upon a trial for one such offense the whole transaction is admissible." Kilpatrick v. State, 257 Ala. 316, 318, 59 So.2d 61 (1952).
See also Gunter v. State, 111 Ala. 23, 25-26, 20 So. 632 (1896) ("It is the settled rule of this court, that a defendant cannot be lawfully punished for two distinct felonies, growing out of the same identical act, and where one is a necessary ingredient of the other. . . . So, it has been held, that where the same act of unlawful shooting resulted in the death of two persons, an acquittal or conviction on the trial of one would be a good defense on a second trial for the alleged murder of the other, for the reason that the killing constituted but one crime, which could not be subdivided and made the basis of two prosecutions. Clem v. The State, 42 Ind. 420. And again, where one blow produces two separate assaults and batteries on two different persons, a conviction of one may be pleaded in bar to an indictment for the other, for the reason that the defendant cannot be punished for two distinct assaults growing out of the same identical act."); Ben v. State, 22 Ala. 9 (1853) (Indictment charging defendant-slave with administering poison to white persons was not duplicitious and charged only one offense); Windham v. State, 41 Ala. App. 280, 281-82,129 So.2d 338 (1961) (Automobile collision in which four individuals were killed, court noted, "Where the same act, design, and impulse *Page 152 
results in the killing of more than one person, it is nevertheless but one act with one single crime resulting");Hurst v. State, 24 Ala. App. 47, 49, 129 So. 714 (1930) ("If upon the trial of the issue presented by the plea it should appear that defendant killed both Malon Farmer and Dewy Cox, with a formed design as to each, the plea would fail. Per contra, if it should appear that the defendant, while defending himself from an assault by Farmer, without formed design as to Cox, killed him also, there would be but one offense. Defendant could be tried but once for the killing of both." The court stated the rule: "Where a man kills two men in quick succession, with a formed design as to each man, it constitutes two offenses. But where the killing is pursuant to and is a continuation of the assault and done under the impulse of the same design, it is but one act."); Moss v. State, 16 Ala. App. 34,35, 75 So. 179, cert. denied, 200 Ala. 700, 76 So. 998
(1917) ("It is true that the same person may at the same time and in the same transaction commit two or more distinct criminal offenses; as in an affray a person shoots and kills one person, and by a second act shoots and wounds another; but each act must necessarily separately have all the elements of a crime, and each must be a separate act."). See also Free v.State, 455 So.2d 137 (Ala.Crim.App. 1984).
Although most of these cases were cited by Hampton in his appellate brief, the State has made no attempt to distinguish them. From this we can only conclude that the State found nothing to distinguish the above-cited cases from the one on appeal. Reluctantly, we have reached this same conclusion.
We are thoroughly convinced that the view that each injury is to be regarded as constituting a separate or distinct offense is sustained by the weight of authority and by the better reason. Berry v. State, 195 Miss. 899, 16 So.2d 629 (1944). However, it is not the law in this state. We respectfully urge our Supreme Court to adopt this view.
Yet, despite our dissatisfaction with the current state of the law, we are bound by the decisions of our Supreme Court. Alabama Code § 12-3-16 (1975). This Court has no authority to declare unsound and overrule cases of the supreme court. Hallv. State, 29 Ala. App. 588, 199 So. 744 (1940).
Even though three people were wounded by the single shotgun blast, this constitutes but a single offense under Alabama law. Hampton could only be legally prosecuted for one offense. The judgment of the circuit court is reversed and rendered.
REVERSED AND RENDERED.
All Judges concur.