954 So.2d 1127 (2006)
Kevin LAWSON
v.
STATE of Alabama.
CR-05-0010.
Court of Criminal Appeals of Alabama.
August 25, 2006.
Rehearing Denied October 6, 2006.
*1129 William Morgan Rayborn, Brantley, for appellant.
Troy King, atty. gen., and Nancy M. Kirby, asst. atty. gen., for appellee.
PER CURIAM.
Kevin Lawson appeals his August 3, 2005, conviction for second-degree robbery, violation of § 13A-8-42, Ala.Code 1975, by the Montgomery Circuit Court. He was sentenced in accordance with the Habitual Felony Offender Act, § 13A-5-9, Ala.Code 1975, to 20-years' imprisonment. He was also ordered to pay court costs, restitution, and $50 to the victims compensation fund in accordance with § 15-23-17(b), Ala.Code 1975.
Lawson and an accomplice robbed a Spectrum convenience store in Montgomery on April 28, 1995. He was arrested the same day, and he posted a $10,000 appearance bond and was released from the Montgomery County jail on May 1, 1995. (C. 2.) He was indicted on June 30, 1995. (C. 2.) From July 10 until August 2, 1995, Lawson was incarcerated at the Autauga County jail on a different charge. He was then released to the Clanton Police Department. (C. 94.) A letter contained in the record from Autauga County Sheriff Herbie Johnson states: "A hold had been placed by Montgomery County and when they were notified subject was being released, they advised they had nothing on him." (C. 94.)
The matter was set for trial on August 28, 1995, but Lawson failed to appear for trial. The trial was reset for September 19, 1995, but again Lawson failed to appear for trial. A capias warrant was issued for Lawson on September 22, 1995.
Sometime before December 1995, Lawson was incarcerated at Rikers Island, a jail for New York City. (C. 14.) He was to be released from Rikers Island on August 26, 1996, but a robbery charge was pending in New York City. (C. 39.) From 1996 until 2004, Lawson was incarcerated in the State of New York, apparently for the conviction of the aforementioned robbery charge. (R. 13.) While Lawson was incarcerated in New York, Autauga County placed a detainer on Lawson. He waived extradition, but Autauga County decided not to prosecute Lawson, and the detainer was removed.
On June 9, 2005, Lawson was detained by the New York State Division of Parole on the Montgomery County robbery charge. (R. 4.) Lawson waived extradition, and the capias warrant was executed on July 2, 2005. (R. 4; C. 2.) A two-day trial was held August 2-3, 2005, before a Montgomery County jury which found Lawson guilty of second-degree robbery. (C. 3.)

*1130 I.
Lawson argues on appeal that he was not properly arraigned for the robbery charge and that the trial court thus committed reversible error. The State, in a 12-line argument in its brief, summarily dismisses Lawson's argument as not properly preserved for appellate review. A review of the record, however, makes it obvious that this issue was properly preserved for our review.[1]
In his "Motion to Dismiss for Failure to Provide a Speedy Trial" filed July 6, 2005, Lawson stated:
"The case action summary sheet does not indicate that [Lawson] was arraigned; however, there is an entry dated August 28, 1995, stating that [Lawson] failed to appear for trial, at which time a forfeiture and capias was issued. It does not appear, however, from the file that [Lawson] was ever notified of his trial date."
(C. 47)(emphasis added). Further, in his "Motion for Defendant to be Released on Bail" filed July 7, 2005, Lawson stated:
"The case action summary sheet indicates that [a forfeiture and capias] was issued on August 28, 1995; however, [Lawson] has advised the undersigned attorney that he was never advised of his trial date. Further, the case action summary sheet does not indicate that the Defendant was ever arraigned."
(C. 45)(emphasis added). Immediately before trial, the trial judge held a hearing on Lawson's motion to dismiss on speedy-trial basis, during which Lawson testified. During his testimony, the following occurred:
"Q. [Defense Counsel]: Were you ever arraigned-arraignment is where you plead either guilty or not guilty. You go before the judge and plead either guilty or not guilty. Were you ever arraigned on the charge of Robbery Two here in Montgomery?
"A. [Lawson]: No, I was not."
(R. 5.) After Lawson testified, the following exchange occurred:
"[DEFENSE COUNSEL]: Your Honor, I would ask the court to take judicial notice of the documents that are in the court file. And would call the court's attention to a letter which I'm going to introduce into evidence as a part of this hearing marked Defendant's Exhibit 1. It purports to be a letter from the sheriff of Autauga County stating that Mr. Lawson was incarcerated in the Autauga County jail from July 10, '95 through August 2, '95.
"That he had been brought to that facility by Steve Roberts Bonding Company. And that Mr. Lawson was released from the Autauga County jail to the Clanton Police Department. That a hold had been placed by Montgomery County. And when Montgomery County was notified that Mr. Lawson was being released, Montgomery County advised that they had nothing on him.
"[PROSECUTOR]: Judge, I'm going to object to that being admitted as evidence. [Defense counsel] has failed to authenticate that.
"THE COURT: It is part of the court file. All of that is going to be considered and [Defense counsel] just at the same time your client has just testified he didn't know anything about this until '05. The court file reflects that he was *1131 served in 1995. So that's the reason we have a '95 case number. So just so that the file is clear and the testimony is clear, I know your client says he didn't know, he failed to show up for the first trial we had set back in August of '05 after being served. Okay.
"[DEFENSE COUNSEL]: Judge, just for the sake of clarity. When you say after being served, you mean served with the indictment or
"THE COURT: Yes, sir. They wouldn't have made a file. I wouldn't have this red file marked 1995 unless he was served with a copy of the indictment. The red file is not created until he is served.
"[DEFENSE COUNSEL]: Judge, with all due respect, the Alabama Rules of Criminal Procedure provide that if somebody has been arrested for a criminal offense and is released on bond, that that person is not rearrested after indictment unless the bond changes. If the bond goes higher, then the person is due to be rearrested in order for that person to make the higher bond.
"So I think that was the procedure back in 1995 where the indictmentthe defense attorney would be notified that [Lawson] had been indicted and then normally the defense attorney would advise the client of that fact or mail the client a notice, have the client appear to plead either guilty or not guilty or to sign a plea of not guilty and waiver of arraignment.
"In this case there is nothing on the case action summary sheet to indicate that [Lawson] was ever advised of being indicted. And there is nothing on the case action summary sheet to indicate that he was ever arraigned on the indictment.

"THE COURT: It is because he absented himself from the jurisdiction for the trial. Had he been here, those matters would have been taken care of."
(R. 7-11) (emphasis added). The trial court then stated:
"THE COURT: Of course he knows he has a trial. He made bond to start with. Of course he knows he has a case here. So sorry I can't agree with you on that. And the records will speak for whatever the records say."
(R. 11-12.) After the trial, Lawson filed a motion in arrest of judgement or for a new trial in which he stated:
"This Motion In Arrest of Judgment/Motion For New Trial is due to be granted unless the State can prove that the court file affirmatively shows that [Lawson] was arraigned and entered a plea to the indictment. O'Leary v. State, [417 So.2d 214 (Ala.Crim.App. 1980)]."
and
"The indictment against [Lawson] should have been dismissed in that [Lawson] was denied a speedy trial. [Lawson] was indicted by the Montgomery County Grand Jury on June 30, 1995. The Case Action Summary Sheet does not reflect that [Lawson] was ever arraigned, nor does the court file reflect that [Lawson] was ever given notice of his trial date."
(C. 88-89).
It is readily apparent from the foregoing that before trial Lawson placed the trial court on notice that he had not been arraigned, and the trial court still failed to arraign him. Thus this issue is preserved for our review.

B.
We now turn to the merits of Lawson's argument that the trial court committed reversible error by not arraigning *1132 him. Section 15-15-20.1(c), Ala.Code 1975, states:
"Upon the filing of an information, the court shall ascertain whether the defendant has retained counsel, and, shall appoint counsel if the defendant is indigent. The court shall set an arraignment date to enable the defendant to formally enter a plea of guilty in open court. Arraignment may be held and the guilty plea entered at any time after the filing of an information."
The Alabama Rules of Criminal Procedure also address this issue:
"(a) In General. Except as provided in section (b), no defendant shall be tried for the commission of any misdemeanor or felony offense until he has been arraigned in open court."
Rule 14.1, Ala. R.Crim. P. Arraignment may happen any time before trial. In fact, a defendant may be arraigned after the jury has been empaneled. Carroll v. State, 445 So.2d 952 (Ala.Crim.App.1983).
A defendant waives arraignment if he does not timely object to not being arraigned. "`Even arraignment and plea can be waived by a defendant's failure to object to the lack thereof until after the jury has returned a verdict.'" Soriano v. State, 527 So.2d 1367, 1372 (Ala.Crim.App. 1988) (quoting Smith v. State, 507 So.2d 579, 580 (Ala.Crim.App.1987)).
However, if a defendant brings to the trial court's attention before trial the fact that he has not been arraigned, and the trial court fails to remedy the situation, this Court must reverse the trial court's judgment and remand the case for a new trial. Benson v. State, 473 So.2d 1132 (Ala.1985). See also Hovater v. State, 552 So.2d 191 (Ala.Crim.App.1989); McMurray v. State, 373 So.2d 872 (Ala. Crim.App.1979); Pugh v. State, 343 So.2d 793 (Ala.Crim.App.1977); and Rorex v. State, 44 Ala.App. 112, 203 So.2d 294 (1967).
We have thoroughly reviewed the record and find no indication that Lawson was ever arraigned in this matter or that he waived arraignment. This supports Lawson's sworn testimony that he was never arraigned. Therefore, the trial court's judgment must be reversed, and the case remanded for a new trial. The trial court is also instructed to arraign Lawson before the new trial.

II.
Lawson also argues that he was deprived of his right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution. Although the judgment is being reversed on other grounds, we shall address the merits of this issue because it may be raised again during any new trial.
Over 10 years elapsed between when the commission of the crime and Lawson's trial on the charges stemming from the crime. Lawson alleges this was an undue delay that prejudiced his ability to properly defend the charges. We disagree.
No fixed and hardened rule can be used to determine whether an individual has been unduly prejudiced by a delay between arrest and trial. Instead, a balancing test which weighs four factors is to be applied: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice suffered by the defendant due to the delay. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

A. Length of Delay
Under the Barker analysis, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity *1133 for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. 2182. In this matter, Lawson was arrested on April 28, 2005, and was indicted on June 30, 1995, but his trial did not commence until August 2, 2005. (C. 3). Obviously, a 10-year delay is presumptively prejudicial. See, e.g., State v. White, [Ms. CR-05-0034, June 30, 2006] ___ So.2d ___ (Ala.Crim.App.2006) (42-month delay presumptively prejudicial); Irvin v. State, (2005) 940 So.2d 331 (Ala.Crim.App.2005) (32-month delay presumptively prejudicial); Lofton v. State 869 So.2d 533 (Ala. Crim.App.2002); and (41-month delay presumptively prejudicial). Thus, we proceed to examine the remaining Barker criteria.

B. Reason for Delay
In analyzing the reason for a delay, the Alabama Supreme Court has stated:
"The State has the burden of justifying the delay. See Barker, 407 U.S. at 531, 92 S.Ct. 2182; Steeley v. City of Gadsden, 533 So.2d 671, 680 (Ala.Crim. App.1988). Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531, 92 S.Ct. 2182. Courts assign different weight to different reasons for delay. Deliberate delay is `weighted heavily' against the State. 407 U.S. at 531, 92 S.Ct. 2182. Deliberate delay includes an `attempt to delay the trial in order to hamper the defense' or `"to gain some tactical advantage over (defendants) or to harass them."' 407 U.S. at 531 & n. 32, 92 S.Ct. 2182 (quoting United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182; Ex parte Carrell, 565 So.2d [104,] 108 [(Ala.1990)]. Justified delay which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsibleis not weighted against the State. Barker, 407 U.S. at 531, 92 S.Ct. 2182; Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App. 1993) (`"Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker."') (quoting McCallum v. State, 407 So.2d 865, 868 (Ala.Crim.App.1981))."
Ex parte Walker, 928 So.2d 259, 265 (Ala. 2005).
Apparently while awaiting trial in this matter, Lawson traveled to New York, where he was incarcerated on another robbery charge. It is undisputed the reason for the delay between Lawson's arrest and his trial was his incarceration in New York. However, "[a]n accused's right to a speedy trial remains undiminished even when he is already serving a prison sentence." Aaron v. State, 497 So.2d 603, 604 (Ala.Crim.App.1986). See also Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). In most cases where a defendant has absented himself from the jurisdiction, his absence would be considered justified delay. However, because of Smith v. Hooey and its progeny, Lawson's absence cannot be considered justified delay. The record is devoid of any indication that the State intentionally did not seek to bring Lawson back to Alabama for trial in order to thwart his defense or to gain a tactical advantage over Lawson. Thus, the State's failure to have Lawson returned to Alabama for trial constitutes negligent delay which weighs slightly against the State. In analyzing this matter, it should be noted that this matter was scheduled for trial three months after Lawson's arrest. Lawson failed to appear for trial, and the trial was rescheduled for a month later. Again Lawson failed to *1134 appear. Lawson thus was provided an opportunity for trial 10 years before his trial actually occurred.

C. Assertion of the Right
The record is devoid of any indication that Lawson asserted his right to a speedy trial until July 6, 2005, when he filed a motion to dismiss the prosecution against him premised upon the State's failure to provide him with a speedy trial. Lawson's trial was held less than a month after he filed this motion. Lawson's failure for 10 years to assert his right to a speedy trial "`"tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date. Stevens v. State, 418 So.2d 212, 214 (Ala.Cr. App.1982)." Lewis v. State, 469 So.2d [1291,] 1294 [(Ala.Crim.App.1984)].' Vincent v. State, 607 So.2d 1290, 1294 (Ala. Crim.App.1992)." State v. White, ___ So.2d at ___.
D. Prejudice to the Defendant
"Because `pretrial delay is often both inevitable and wholly justifiable,' Doggett [v. United States], 505 U.S. [647,] 656, 112 S.Ct. 2686 [(1992)], the fourth Barker factor examines whether and to what extent the delay has prejudiced the defendant. Barker, 407 U.S. at 532, 92 S.Ct. 2182. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: `"oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.' Doggett, 505 U.S. at 654, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182, and citing Smith v. Hooey, 393 U.S. 374, 377-79, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). `Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."' 505 U.S. at 654, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182)."
Ex parte Walker, 928 So.2d at 266-67.
At the hearing on Lawson's motion to dismiss for failure to provide a speedy trial, Lawson's attorney argued that he had been prejudiced because he was unable after 10 years to locate Tina Stollenweck, an employee of the Spectrum convenience store at the time it was robbed. Although Lawson's attorney searched the City Directory of the City of Montgomery and spoke with Stollenweck's relatives, no one knew of her whereabouts. During the hearing, Lawson's attorney stated: "So we don't know what Tina Stollenweck may have had to say. But it is certainly conceivable if thatif she was there on that occasion or if she had some knowledge of what had happened, we have lost out on the opportunity to call her as a witness." (R. 21.) In his brief to this Court, Lawson concedes that "[w]e only know through the power of suggestion that Ms. Stollenweck could have aided Mr. Lawson." (Appellant's reply brief, p. 10). In order to show prejudice, Lawson must point to specific facts in evidence and not just mere speculation of what a witness may or may not have known. "`"[S]peculative allegations, such as general allegations of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice. . . ."' that the appellant must establish." Irvin v. State, 940 So.2d 331, 344 (Ala.Crim.App.2005) (quoting Haywood v. State, 501 So.2d 515, 518 (Ala.Crim.App.1986), quoting in turn United States v. Butts, 524 F.2d 975, 977 (5th Cir.1975)). Thus, Lawson failed to *1135 show any prejudice which occurred because of the delay.
The 10-year delay between Lawson's arrest and trial, while presumptively prejudicial, does not constitute a Sixth Amendment violation. Lawson's case was set for trial twice within four months of his arrest, yet Lawson failed to appear. Although the State should have attempted to have Lawson extradited from New York to stand trial, such inaction was negligent, at most. Lawson further failed for 10 years to assert his right to a speedy trial. Finally, Lawson failed to show that he was prejudiced by this delay. Because his right to a speedy trial was not violated, Lawson is not entitled to any relief as to this claim.
Because the record fails to reflect that Lawson was arraigned before trial, the judgment of the Montgomery Circuit Court is reversed, and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, J., concurs specially, with opinion, joined by McMILLAN, P.J., and BASCHAB and SHAW, JJ.; WISE, J., recuses herself.
COBB, JUDGE, concurring specially.
Only because this Court is bound by the precedent of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, and "has no authority to declare unsound and overrule cases of the supreme court" do I concur with the other members of this Court in reversing the Montgomery Circuit Court and remanding this matter for a new trial. Hampton v. State, 455 So.2d 149, 152 (Ala. Crim.App.1984) (abrogated on other grounds by McKinney v. State, 511 So.2d 220 (Ala.1987)).
Arraignment proceedings have their origins in English common law. As Justice Mayfield of the Alabama Supreme Court explained almost a century ago:
"An arraignment at English common law was much more formal than with us now. Under the former, Lord Hale says: `An arraignment consists of three things: First, the calling of the prisoner to the bar by his name and commanding him to hold up his right hand, which, though it may seem a trifling circumstance, yet it is of importance, for, by holding up his hand, constat de persona indictati, and he owns himself to be of that name; second, reading the indictment distinctly to him in English, that he may understand his charge; third, demanding of him whether he be guilty or not guilty, and if he pleads not guilty then the clerk joins issue with him cul. prist, and enters the prisoner's plea, then demands how he will be tried. The common answer is "By God and the country," and thereupon the clerk enters po. se., and prays to God to send him a good deliverance.'
"With us, however, it is nothing more than calling the accused to the bar of the court, and reading or explaining the indictment to him, and demanding his plea. Its only purpose is to obtain from the accused his answer or plea to the indictmentCrain v. United States, 162 U.S. 625, 16 Sup.Ct. 952, 40 L.Ed. 1097 [(1896)]; Early v. State, 1 Tex.App. 248, 28 Am. Rep. 409 [(1876)]. Our statutes (section 7565 of the Code of 1907[[2]]) directs that if the defendant on arraignment refuses or neglects to plead, or stands mute, the court must cause the plea of not guilty to be entered from him. Under our practice and statutes, one charged of a capital offense is required to be arraigned, and his plea *1136 to be interposed, at least one entire day before the day of the trial, so that it may be determined whether or not he is entitled to a special venire for his trial. If, on arraignment, he pleads `guilty,' he is not entitled to the special venire; if he pleads `not guilty,' he is, and this special venire, together with a copy of the indictment, must be served upon him or upon his counsel one entire day before trial. Code, §§ 7566, 7840."
Howard v. State, 165 Ala. 18, 27-28, 50 So.2d 954, 957-58 (1909).
More recently this Court observed, "the `common law formalities attendant on arraignment are no longer required. Boyd v. State, 41 Ala.App. 507, 138 So.2d 60 (1962). Its only purpose is to obtain from the accused his answer or plea to the indictment.' See also, Carroll v. State, 445 So.2d 952 (Ala.Cr.App.1983); Watts v. State, 460 So.2d 204 (Ala.1983)." O'Neal v. State, 494 So.2d 801, 803 (Ala.Crim.App. 1986) (quoting Headley v. State, 51 Ala. App. 148, 151, 283 So.2d 458 (Crim.1973)).
As early as 1891, the Alabama Supreme Court held that "[t]here can be no trial on the merits in a criminal case until the defendant has pleaded not guilty, or this plea has been entered for him by the court." Jackson v. State, 91 Ala. 55, 57-58, 8 So. 773, 774 (1891). In the intervening decades, this Court has intermittently been faced with similar situations and has held that reversible error occurs when the trial court fails to arraign a defendant and the defendant places the trial court on notice prior to trial of this omission. See, e.g., Collins v. State, 21 Ala.App. 192, 106 So. 624 (1925); Howard v. State, supra; Presley v. State, 22 Ala.App. 167, 113 So. 485 (1927); Chesnut v. State, 35 Ala.App. 376, 47 So.2d 248 (1950); Rorex v. State, 44 Ala.App. 112, 203 So.2d 294 (1967); Pugh v. State, 343 So.2d 793 (Ala.Crim. App.1977); McMurray v. State, 373 So.2d 872 (Ala.Crim.App.1979); Hovater v. State, 552 So.2d 191 (Ala.Crim.App.1989). As recently as 1985 the Alabama Supreme Court reaffirmed this proposition of law. See Ex parte State, 473 So.2d 1132 (Ala. 1985).
The record clearly indicates that although Lawson may not have been arraigned, he received a fair trial before a jury of his peers. The trial court treated Lawson like any other defendant who had been properly arraigned and pleaded not guilty to the offense charged. Lawson thus suffered no prejudice by the trial court's apparent failure to arraign him.
Because of controlling precedent, this Court is forced to reverse and remand this matter on a technicality even though the record reveals that Lawson received a fair trial and all the constitutional guarantees afforded an indictee who has been properly arraigned and advised of his other rights. Remanding this matter for retrial is a wasteful use of Alabama's tax dollars and an insult to the concept of judicial economy. I therefore encourage the Alabama Supreme Court to reconsider the precedent set forth by Jackson, supra, Ex parte State, supra, and their progeny so that valuable judicial resources will not be wasted in such a manner as this.
NOTES
[1] The issue that the appellant now argues was brought to the attention of the trial court by able trial counsel and was extensively discussed with the trial court at a hearing before trial. This Court is at a loss as how it could be argued that this issue is not preserved for appellate review.
[2] Currently codified as § 15-15-1, Ala.Code 1975.